Bisson v. Curry.

---

BISSON v. CURRY.

1. **Patent:** VALIDITY OF MAY BE QUESTIONED. The validity of a patent and the title acquired thereunder may be inquired into in a court of equity when attacked on the ground of fraud practiced in its procurement ; and the rightful title declared to be in another.

2. —— The facts alleged in the present case, and which were held on demurrer to be sufficient, as constituting such fraud, stated.

3. **Receiver :** APPOINTMENT OF. The judge of the district court has no power to appoint a receiver in vacation without notice to the opposite party. Following *French* v. *Gifford*, 30 Iowa, 148.

*Appeal from Hamilton Circuit Court.*

WEDNESDAY, SEPTEMBER 18.

THE plaintiff filed, in the Hamilton district court, a petition alleging that he is owner in fee simple of the

N. E. ¼ of Sec. 13, Tp. 86, R. 26, and that defendant unlawfully keeps him out of possession thereof. Petition further alleges that the rental value of said property is from $20 to $50, that defendant is insolvent, and the rents and profits are in danger of being lost. Petition prays the appointment of a receiver to take possession of the premises.

Upon presentation of this petition, the judge of the district court, in vacation, without notice to defendant, appointed a receiver of the property.

Subsequently, upon application of defendant, the venue was changed to the circuit court of Hamilton county. In this court the defendant filed an answer denying the allegations of the petition, and alleging, by way of equitable defense and counter-claim, in substance, that he purchased a claim upon the lands in petition described, of one Wilson, who was living on the same, and had made valuable improvements thereon, with the intention of pre-empting or homesteading said land; and that defendant took possession thereof, established his residence and the home of his family thereon, and has ever since made his home on said land, cultivated, and continued to improve the same.

That in the fall of the year 1866, shortly after he entered into the possession of said land and established his residence thereon, he made application to the officers of the United States land office at Fort Dodge, for the purpose of filing a pre-emption claim on said lands, and that the officers of said land office wrongfully refused to allow him to file said pre-emption claim, whereupon he applied to said officers to file a homestead claim upon said land, which also they wrongfully refused to allow him to do, alleging as the reason for their refusal, in both instances, that said land was claimed as swamp land by Hamilton county.

That notwithstanding such refusal he continued to live upon, cultivate and improve said land, at all times claiming the right to pre-empt the same; and that under such

Vol. XXXV. — 10

claim he made valuable and permanent improvements thereon to the amount in value of about $500; and that in the year 1868 he again applied to the proper officers of the United States land office to file a homestead claim, and also to file a pre-emption claim upon said land, which they refused to allow him to do. That at the time of making each of the aforesaid applications he was more than twenty-one years of age, a *bona fide* settler and resident upon said land, and fully entitled to pre-empt or homestead the same under the laws of the United States.

That plaintiff claims title to said lands under one L. L. Estes, who, sometime in the year 1869 or 1870, was wrongfully and unlawfully allowed by the officers of the said United States land office to enter said land at the government price of $1.25 per acre. That Estes entered said land while defendant was in possession thereof, with full knowledge of defendant's rights and equities therein, by means of corrupt and unlawful practices as follows : In the year 1869, there was situated in the county of Hamilton some 2,000 acres of government land, including the lands in controversy in this suit, which was claimed by said county as swamp lands ; but, no proofs of the swampy character of said land having been made, the title to said land remained in the United States. That for the purpose of obtaining said lands, and particularly those in petition described, at government prices for private speculation, the said Estes entered into a corrupt and unlawful combination and agreement with one D. D. Miracle, plaintiff's attorney in this suit, and other persons to defendant unknown, whereby the said Estes, Miracle and their associates should obtain said 2,000 acres of land, in violation of the rights and equities of all other parties, especially of defendant ; and that said Estes and Miracle having ascertained that they would be allowed by the officers of the land office to enter the whole of said lands in violation of the rights of defendant and others, if the claims of Hamil-

ton county to said lands as swamp lands were canceled, the said Miracle obtained a contract from the board of supervisors of Hamilton county to prove the swampy character of said lands, and obtain the same for said county at twenty cents per *acre*, by which contract the said Miracle became ostensibly the agent of the county, but in reality it was a device of Miracle and Estes the more readily to enable them to impose upon the officers of the said land office, and to obtain the said *lands* in accordance with the said combination and agreement.   That, having obtained the contract aforesaid, the said Miracle procured the board of supervisors of said county to appoint a certain committee to act with him, ostensibly in behalf of said county ; that in the meanwhile his associate and confederate Estes commenced a proceeding at the United States land office at Fort Dodge, to cancel the claims of Hamilton county to said lands as swamp lands, and to enter the same in his own name, but in reality for himself and said Miracle and others.   That said Miracle and said committee, some members thereof having been .induced thereto by the payment of large sums of money by Miracle and Estes, for the purpose of enabling Estes and Miracle to deprive defendant of his right to pre-empt and homestead said land, proceeded to impose upon the officers of said land office the belief, and to obtain from them the decision, and through them the decision of the commissioner of the general land office of the United States at Washington, that the greater part of said lands were government lands, subject to entry at government prices, and that no right or equities intervened to prevent the entry of said lands ; whereby said Estes was allowed, by the officers of said land office, to enter the same, including the claim of defendant.   That all such proceedings were fraudulent, unlawful, without any notice to defendant, and that he is not bound thereby.   That after said entry defendant refused to recognize any rights of Estes and

Miracle in said land, and continued to reside on and cultivate the same at the time plaintiff purchased of Estes.

The petition further alleges that, since the appointment of a receiver, the premises have been wholly unoccupied and the improved land uncultivated; that cattle have been permitted to run at large over the land, destroying fruit-trees, shrubbery, etc., and offers to give such reasonable bond as the court may require to secure to plaintiff the rents and profits during the pendency of the litigation. The petition prays a dissolution of the order appointing a receiver; that the entry of the land by Estes and the conveyance to plaintiff be decreed to be wrongful and unlawful; that plaintiff be deemed to hold the legal title of said land in trust for defendant, and for general relief.

To this answer the plaintiff demurred upon the following grounds:

1. Said answer does not state facts sufficient to constitute a defense to the plaintiff's claim, nor a cause of action against the plaintiff, nor against those whom he seeks to have made parties to this suit, specifying under this ground ten causes of demurrer.

2. This court has no jurisdiction to review the decisions and actions of the officers of the land office at Fort Dodge. Such officers are presumed to act discreetly, and their decisions are presumed to be correct unless reversed upon review, had upon appeal to the commissioner of the general land office at Washington.

The court sustained this demurrer, and, the defendant electing to stand upon his answer, adjudged that the plaintiff recover the possession of the premises described in the petition. Defendant appeals.

*Clark & Moulton* for the appellant.

*D. D. Miracle,* with whom is *J. M. Elwood* for the appellee.

DAY, J.—I. The ten specific causes of demurrer assigned under the first head are stated very elaborately. It would occupy much space to set them forth *seriatim*, and much greater space to give to them a separate consideration. Most of them have received no attention in the argument. All the questions presented may be conveniently and satisfactorily discussed under the following general proposition : Do the facts stated entitle the plaintiff to the relief asked ?   Briefly collated, the facts set forth in the petition are these :  The defendant occupied and made valuable improvements upon the lands in dispute, with a view of pre-empting or homesteading them.   He made due application at the proper land office for leave to file a pre-emption claim, and also a homestead claim thereon, and was refused permission to do so upon the ground that the lands were claimed by Hamilton county as swamp land.   One Estes, with full knowledge of defendant's possession, improvements and claim, confederating with others for the purpose of depriving defendant of his rights, procured, from the officers of the land office at Fort Dodge, and from the commissioner of the general land office at Washington, a decision that the lands were subject to entry at government prices, and thereupon entered the same.   That plaintiff purchased of Estes, with full knowledge of all defendant's rights and equities.   For the purposes of this suit the decision of the officers of the land office, and of the commissioner of the general land office, that the lands in question were subject to entry notwithstanding the claim of Hamilton county that they were swamp lands, will be presumed to be correct, as the claim of both parties is predicated upon the fact that the lands were so subject to entry.   If, then, the officers of the land office rightly decided that the claim of Hamilton county was not valid, and would not prevent an entry of the lands, they wrongly refused to allow defendant, in consequence of such claim, to file his pre-emption or his home-

1. PATENT: validity of may be questioned.

stead claim. The defendant did all in his power to do, without the concurrence of the officers of the land office. He moved upon the land with his family, occupied and cultivated the same, and made valuable improvements thereon. He made a timely offer to file his pre-emption and his homestead claim, and was not allowed to do so, in consequence of a claim of Hamilton county which is subsequently declared to be unfounded. He was entitled to pre-empt or to homestead the lands in question. Is he deprived of all relief simply from the fact that Estes was allowed to enter the land and obtain a patent therefor? Numerous decisions both in the State and Federal courts have decided this question in the negative, when the circumstances are such as to bring the case within any recognized head of equity jurisdiction, such as fraud or mistake. See *Isaacs* v. *State*, 3 Scam. 97; *Bruner* v. *Manlove*, id. 339; *Smith* v. *Mosier*, 5 Blatchf. 51; *Doe* v. *Stephenson*, 9 Ind. 144; *Huntsucher* v. *Clark*, 12 Mo. 333; *Perry* v. *O'Hanlon*, 11 id. 585; *Brush* v. *Ware et al.*, 15 Peters, 93; *Garland* v. *Wynn*, 20 How. 6; *Cunningham* v. *Ashley*, 14 id. 377; *Bernard* v. *Ashley*, 18 id. 44; *Lindsey* v. *Hawes*, 2 Black, 554; *Stark* v. *Stans*, 6 Wall. 402; *Meader et al.* v. *Norton*, 11 id. 443.

This whole subject has recently received elaborate and exhaustive consideration in the supreme court of the United States. See *Johnson et al.* v. *Towsley*, December term, 1871. In this case the contest arose out of rival claims to the right of pre-emption of eighty acres of land. The register and receiver, after hearing these claims, decided in favor of Towsley, and allowed him to enter the land, receive his money, and gave him a patent certificate. On appeal to the commissioners of the land office their action was affirmed, but on a further appeal to the secretary of the interior the action of those officers was reversed, and the patent issued to Johnson. Towsley brought an action in the proper State court of Nebraska,

to compel a conveyance to him of the title held by John-son, on the ground that in equity he was entitled to it. The Nebraska courts decreed as prayed. This decree the supreme court of the United States affirmed. In this case all of the leading questions presented by the demurrer are fully discussed and determined adversely to the ap-pellee. The case differs from the one at bar only in one noticeable feature, to wit: Towsley had procured a dupli-cate receipt, and thus had some paper evidence of title, whereas Curry had none.

In the case of *Sampson* v. *Smiley*, supreme court United States, December term, 1871, Smiley was in the same condition as Curry, having no certificate or other evidence of title. Yet the court held that this fact made no difference in his rights, and affirmed the decree of the supreme court of Nebraska, declaring Sampson a trustee of the title for Smiley, and directing him to convey accordingly. This last case, in the principles involved, is on all fours with the present. In view of these authori-ties, as well as upon principles of natural justice and equity, we do not hesitate to hold that the facts alleged in defendant's answer entitle him to the relief prayed.

II. Some minor questions are argued by appellee, such as that the answer does not show that defendant is entitled to a pre-emption, in that it does not allege that he is not the owner of three hundred and twenty acres of land, nor that he has never previously had the benefit of the pre-emption act. And that it does not show that he is entitled to a homestead in that it does not aver that he has never borne arms against the United States, nor that he had never before availed himself of the provisions of the homestead act.

And that the cross-petition is defective in that it does not allege a tender, to plaintiff or his grantor, of the pur-chase-money paid by him.

Without determining the necessity of any of the aver-

ments, it is sufficient to say that none of these defects are suggested by the demurrer. The demurrer points out specific objections to the petition. While it is true that a general demurrer may be interposed to a petition in equity, yet if a party undertakes to specify grounds of demurrer, he will be confined to those designated. *Allen* v. *Cerro Gordo County*, 34 Iowa, 54.

III. The receiver was appointed without notice to defendant, and without the allegation of any facts in the 3. RECEIVER : ap- petition showing the necessity for such course. pointment of. Even if the facts alleged in this petition were such as in any event to render the appointment of a receiver proper (a question upon which we now express no opinion), it is clear that the receiver should not have been appointed without notice to the defendant. *French* v. *Gifford*, 30 Iowa 148 (*i. e.* 160).

Reversed.