## BELLOWS v. TODD.

1. **Public Lands**: HOMESTEAD AND PRE-EMPTION RIGHTS: EFFECT OF CERTIFICATION. The certification of public lands to a state, under the act of Congress of August 8, 1846, amounts to a reservation of the lands from entry or sale, and they cannot, after the date of the certification, be entered under the homestead or pre-emption acts.

2. ———: ———: STATUTE OF LIMITATIONS. The statute of limitations does not operate in favor of one who enters upon land for the purpose of pre-empting it or taking a homestead thereon, since no length of mere naked possession for such purpose would establish a title against the United States.

3. **Corporations**: POWERS OF DIRECTORS: CONVEYANCE. The directors of a corporation may authorize a conveyance of real estate at a meeting held outside of the state from which it derives its charter. In the exercise of this power they act, not as the corporation, but in the capacity of its agents.

4. ———: TITLE: MISUSER. Irregularities in the manner of transacting the corporate business cannot be shown in an action to which the corporation is not a party, for the purpose of defeating a title derived through the corporation.

5. **Title**: RECOVERY OF REAL PROPERTY. In an action for the recovery of real property, the plaintiff must rely upon the strength of his own title.

*Appeal from Humboldt District Court.*

WEDNESDAY, SEPTEMBER 23.

THE plaintiff, on the 19th day of May, 1870, filed in the Humboldt District Court his petition alleging that he was the owner in fee and entitled to the immediate possession of lots numbered three and four, and the west half of the southeast quarter of section 27, township 92, north, of range 28, west, and that he was unlawfully kept out of possession of the same by the defendant, and praying judgment for the possession and for damages. Notice of the commencement of the action was served on defendant on the 18th day of May, 1870.

The defendant for answer denied the allegations of the petition, and alleged that he is the owner of the property claimed; that he settled upon the premises under the pre-emption and

homestead laws of the United States in 1860; that he has in all respects complied with the same, and is now in possession of said land in virtue of such settlement and entry. That he settled upon said land more than ten years prior to the commencement of this action, under a title adverse to that of plaintiff, and that this action accrued more than ten years prior to the commencement thereof.

On the 28th of March, 1872, defendant filed an amended and substituted answer, alleging, in addition to the defenses before interposed, in substance, that the title of plaintiff is derived through the Des Moines Navigation and Railroad Company, an association claiming to have been incorporated under the laws of the State of Iowa, but that it was not in fact incorporated; that it was composed entirely of persons who were at no time citizens or residents of the State of Iowa; that all their acts of incorporation were done in the city of New York; that the association did not, previous to commencing business, adopt articles of incorporation and cause the same to be recorded in the county where its principal place of business was to be. That the conveyance under which plaintiff claims to have derived title from said corporation was executed by the president and treasurer thereof, at the city of New York, and that no resolution or order authorizing such conveyance was made by its board of directors in the State of Iowa, nor was the same in any other manner authorized by any act of said pretended corporation.

That on the 8th day of August, 1846, Congress made a grant of lands to the Territory of Iowa, to aid in the improvement of the Des Moines River, and on the 9th day of June, 1854, the commissioner of the Des Moines River improvement, without any authority, made a contract with the Des Moines Navigation and Railroad Company, whereby said company were to receive said lands for certain work to be done on the river by said company; that the General Assembly of Iowa settled with said company in March, 1858, and on the 2d of May, 1858, the Governor, in pursuance of such settlement, conveyed said lands to said company; that on the 29th day of March, 1861, the Congress of the United States, by

joint resolution, released to the State of Iowa all the title which the United States then retained in said land for the benefit of the *bona fide* purchasers thereof, including this defendant; that on the 30th day of March, 1866, the General Assembly of Iowa appointed a commissioner to adjust the claims of the Des Moines Navigation and Railroad Company and defendant and others to said lands, and that on the 30th day of June, 1866, final adjustment was had, whereby the lands in question were excluded from the grant of March 2d, 1861, on account of the claim of defendant, and other lands were certified to the State in lieu thereof, which adjustment was confirmed by the State in March, 1868, and by the Congress of the United States in March, 1871, and therefore the title of defendant is paramount to that of plaintiff.

Plaintiff offered in evidence, amongst others, the following items of proof:

1. A certified copy of the articles of incorporation of the Des Moines Navigation and Railroad Company, dated May 6th, 1854.

2. The duly certified copy of the contract between the State of Iowa and said company, dated June 19th, 1854, whereby said company undertook to make and finish the improvement of the Des Moines River, and the State undertook and agreed on its part to sell and convey to said company all of the lands donated to the State of Iowa for the improvement of the Des Moines River, by an Act of Congress of August 8th, 1846, and remaining unsold by the State on the 23d day of December, 1853.

3. The joint resolution of the General Assembly of Iowa, containing propositions for a settlement with the Des Moines Navigation and Railroad Company, approved, March 23, 1858.

4. A duly certified list of lands in odd numbered sections, above the Raccoon Fork, and within five miles of the Des Moines river so far as the surveys have progressed, falling to the State of Iowa under the act of the 8th August, 1846, as construed by the Secretary of the Treasury in his letter of the 2d of March, 1849, which list embraced the lands in contro-

versy, and was approved by the Secretary of the Interior, on the 17th day of December, 1853.

5. A letter of R. M. Young, Commissioner of the General Land Office of the United States, to the Secretary of the Board of Public Works in Iowa, announcing the opinion of the General Land Office, that the State, under the act of 8th of August, 1846, is entitled to the alternate sections within five miles of the Des Moines river, throughout the whole extent of that river, within the limits of Iowa.

6. A certified copy of a letter from R. J. Walker, Secretary of the Treasury of the United States, to the members of both houses of Congress from Iowa, and to Richard M. Young, Commissioner of the General Land Office, dated March 2d, 1849, and announcing the opinion that the grant of 8th of August, 1846, extends on both sides of the river, from its source to its mouth, but not to lands on the river, in the State of Missouri.

7. The letter of R. M. Young, Commissioner of the General Land Office, to the Register and Receiver of the United States Land Office at Iowa City, dated June 1st, 1849, advising them that the Secretary of the Treasury had decided that the grant to the State of Iowa, under the act of the 8th of August, 1846, extended along the Des Moines river to its source, and that it did not stop at the Raccoon Fork, as the General Land Office had previously decided, and directing them to withhold from sale all lands situated in the odd numbered sections, within five miles on each side of the river, above the Raccoon forks.

8. A letter of John Wilson, Commissioner of the General Land Office, to the Register of the Land Office at Fort Des Moines, dated January 7th, 1854, and one to George Gillaspy, Register of the State Land Office, at Ottumwa, dated January 6th, 1854, transmitting lists embracing the lands in controversy, as falling to the State of Iowa, under the act of 8th of August, 1846, as construed by the Secretary of the Treasury in his letter of 2d March, 1849, and of the Secretary of the Interior, of the 29th October, 1851, approved by the Secretary of the Interior on the 17th day of December, 1853.

9. A letter of J. M. Edmonds, Commissioner of the General Land Office, dated June 26th, 1862, and addressed to the Governor of Iowa. This letter calls attention to the fact that the decision of the Supreme Court of the United States, at the December Term, 1859, restricts the act of 1846 to lands lying below the mouth of Raccoon Fork, and abnegates the claim of the State to lands lying above that point, and that, under said decision the Secretary of the Interior has held, that the alternate odd numbered sections, falling within the six and fifteen mile limits of the railroads, where they traverse the region of the Des Moines river, above the mouth of the Raccoon Fork thereof, would enure to the State under the act of 15th May, 1856, to aid in the construction of said roads.

The letter recites the joint resolution of Congress of the 2d March, 1861, declaring, " that all the title which the United States still retain in the tracts of land along the Des Moines river, and above the mouth of the Raccoon Fork thereof, in the State of Iowa, which have been certified to the State improperly, by the Department of the Interior, as part of the grant by Congress, approved August eighth, eighteen hundred and forty-six, and which is now held by *bona fide* purchasers under the State of Iowa, be, and the same is, hereby relinquished to the State of Iowa," and requests that the General Land Office be furnished with a list of the tracts of land referred to in said resolution, held by *bona fide* purchasers of the State of Iowa, on the 2d of March, 1861.

10. A list of the Governor, furnished in reply to Commissioner Edmonds' letter, embracing the lands in controversy, and showing that they were patented to the Des Moines Navigation and Railroad Company, May 3d, 1858.

11. A deed from the State of Iowa to the Des Moines Navigation and Railroad Company, dated May 3d, 1858, conveying a large quantity of land, which embraces the land in controversy.

12. A deed of the Des Moines Navigation and Railroad Company, executed March 9th, 1861, conveying lots three and four, in controversy herein, to Robert J. Hubbard.

13. A deed from said Navigation Company, executed

December 14th, 1868, conveying to E. B. Litchfield, the SE¼ of section 27, township 92, range 28.

14. The deed of E. C. Litchfield and wife to plaintiff, executed February 24th, 1870, conveying lots number three and four, described in the petition.

15. The deed of E. B. Litchfield and wife to plaintiff, executed February 11th, 1870, conveying the W½, SE¼ of section 27, in petition described.

Defendant proved that he settled upon the land in 1860, and that he has remained in possession ever since. That he went on the land as a preemptor, and occupied it as such until after the passage of the homestead law, when he surrendered his preemption certificate, and entered it under the homestead act, and received his final certificate in June, 1868. That he has cultivated it under his entry, plowed some fifty acres, and erected a frame dwelling, cellar and outhouses, and that plaintiff had knowledge of these facts.

In rebuttal plaintiff introduced a letter of Joseph Wilson, Commissioner of the General Land Office, to the Register and Receiver of the Fort Dodge Land Office, dated January 16th, 1869, cancelling the homestead entry of defendant, for conflict with the Des Moines River Grant of 1846, and joint resolution of Congress of March 2, 1861, and a certified copy of defendant's homestead entry, from the homestead register in the Fort Dodge Land Office, showing a cancellation of such entry. Defendant proved that he had no knowledge of the cancellation until the commencement of this action on the 18th of May, 1870.

There was a jury trial and a verdict and judgment for defendant. Plaintiff appeals. This case was before us on a former occasion. See 34 Iowa, 18.

*Theo. Hawley*, for appellant.

*Galusha Parsons*, for appellee.

DAY, J.—I. The court gave the following instructions asked by plaintiff:

1. "If the jury find from the evidence that the land in

Bellows v Todd.

controversy was certified to the State of Iowa in 1853 under the Act of Congress of August 8, 1846, then that certification was a reservation of the lands contained in such lists, and the same could not be entered under the preemption or homestead acts by the defendant.

*1. PUBLIC lands: homestead and preemption rights: effect of certification.*

2. " If the jury find from the evidence that the lands in controversy were certified to the State of Iowa by the Secretary of the Interior of the United States, in December, 1853, under the Act of Congress of August 8, 1846, the defendant could not, after the date of such certification, acquire a preemption right to the same or enter the same under the homestead act.

3. "If the jury find from the evidence that the lands in controversy were certified to the State of Iowa in 1853, under the Act of Congress of 8th August, 1846, and that the same have been conveyed by the State of Iowa to the Des Moines Navigation and Railroad Company, and by said company conveyed to plaintiff's grantors, and by them to the plaintiff in this action, then the plaintiff is entitled to recover in this action."

That these instructions are proper was held upon the former appeal. It was for a refusal to give them, in connection with other errors, that the cause was before reversed. See 34 Iowa, 18.

Plaintiff requested the court to give the jury the following instructions:

8. "The plaintiff in this action claims title to the land described in his petition under conveyances from the grantees of the Des Moines Navigation and Railroad Company, and the defendant, as one ground of his defense, alleges that he has been in the continuous occupation and possession of said land for ten years prior to the commencement of this action, and that by reason of such occupation and possession his title is superior and paramount to that of the plaintiff; but if the jury find from the evidence that this land was certified to the State of Iowa under the Act of Congress of August 8, 1846, and has been conveyed by the State to the Des Moines Navigation

and Railroad Company, under which plaintiff holds, then the State having acquired title to said land by the joint resolution of Congress of March 2, 1861, the title of the State, so acquired, enured to the benefit of said company and its grantees and the plaintiff, and if this action was commenced within ten years from the date of the passage of said joint resolution, then the plaintiff is entitled to recover in this action, notwithstanding the alleged occupation and possession of defendant."

The court refused to give this instruction. Plaintiff excepted, and assigns the refusal as error.

Having instructed the jury that if the lands in controversy were certified to the State under the Act of Congress of August 2 —— : —— : 8th, 1846, they could not be entered under the preemption or homestead acts, the court must have refused this instruction upon the ground that, although the land could not be preempted or homesteaded, yet that the statute of limitations would begin to run in favor of one entering for the purpose of preempting or taking a homestead. This view cannot be sound. An entry to preempt a homestead presupposes the title to be in the United States. From this fact the entry derives all its force and vitality. But a mere possession for the purpose of homesteading or preempting, however long continued, could not ripen into a title against the United States. *Nullum tempus occurrit regi.* See *The County of Des Moines v. Harker*, 34 Iowa, 84, and cases cited. When the resolution of March 2, 1861, was passed, the title of the United States was not affected by the possession of the defendant, and by that resolution the title of the United States, unlimited and unqualified, passed to the State of Iowa. The very most that can be claimed for defendant is that the statute of limitations began to run on the 2d of March, 1861.

And, under the facts of this case, it is very doubtful whether the statute began to run then. The defendant makes no proof of any claim of right, or color of title other than his mere naked possession and making of improvements for the purpose of homesteading. We have seen that in virtue of this possession the statute did not run against the United States.

*(margin note: statute of limitations.)*

It is difficult to conceive how such possession, which derives all its force and vitality from the supposition that the title is in the United States, can, when the title passes from the United States, furnish such claim of right or color of title as to support the plea of the statute of limitations. But this point we need not determine, for the action was commenced within ten years from the 2d of March, 1861.

That the title which the State acquired under the resolution of March 2, 1861, enured to the benefit of the Des Moines Navigation Company and its grantees, under the circumstances set forth in the instruction, is elemental. Revision, § 2210; Code, § 1931. The court erred in refusing to give this instruction. The seventh and twelfth instructions asked and refused embody the same principle, substantially, as the eighth. There is no reason for their refusal; but if the eighth had been given, the refusal to give these would not have worked any prejudice. The first instruction given at the instance of defendant is in direct conflict with the eighth asked by plaintiff. The giving of it was error.

II. The plaintiff asked the court to instruct as follows: 4. " While corporations organized under the laws of this State are required to do certain acts specified in the statute, yet the fact whether or not they have done said acts, cannot be inquired into in an action of this kind; and the rights of third persons dealing with such companies cannot be prejudiced by any failure of such companies to do such acts."

This the court gave with the following modification: " It must appear from such acts that the Des Moines Navigation Company have, within this State, authorized the conveyance of real estate." This modification plaintiff assigns as error.

The articles of incorporation of the Des Moines Navigation and Railroad Company provide that its principal place of

3. CORPORA- transacting its business shall be at Ottumwa, with
TIONS : pow-
er of direc-    an office, if necessary, at Keokuk, Fort Des Moines
tors: convey-
ance.           and New York, and that the affairs of the com-
pany shall be conducted by the president and board of directory, consisting of nine persons. A private corporation, whose charter has been granted by one state, cannot hold meetings,

pass votes, and exercise powers in another state. It can have no legal existence out of the boundaries of the sovereignty by which it is created. But there is an obvious distinction between a corporation, as such, holding meetings, passing votes, and exercising corporate powers outside the boundaries of the state of its creation, and the making of a contract outside such state, by the persons intrusted with the management of the affairs of such corporation.

Such persons are not the corporation, but agents of the corporation. That a corporation may, through its agents, make a valid contract in a state other than that of its creation was determined in *The Bank of Augusta v. Earle*, 13 Pet., 521. In *McCall v. Byram Manufacturing Co.*, 6 Conn., 458, it was determined that the directors of a corporation chartered by the State of Connecticut, could legally appoint a secretary at a meeting held by them in the city of New York; and in *Arms v. Conant*, 36 Vt., 743, it was held that, in conferring authority upon an agent to execute a deed, the directors of a corporation act not as a corporation, but as agents of the corporation, and that this authority may be conferred by a vote passed at a meeting of the directors without the state where the corporation was created and exists. See Angell & Ames on Corporations, sections 104 and 273.

The court erred, we think, in the modification of this instruction.

III. The plaintiff asked the court to instruct as follows: "10. The plaintiff claims title to the land in question under conveyances from the grantees of the Des Moines Navigation and Railroad Company, and the defendant, by his fourth defense, alleges certain acts tending, as he claims, to impeach the incorporation of said company and their mode of doing business, and conveying away the lands of said company, but the State having recognized said company as duly incorporated, and their articles of incorporation having been admitted in evidence, they are presumed to have been duly incorporated, and the regularity of their mode of doing their business cannot be inquired into in this action." The refusal to give this instruction is assigned as

4. ———; title: misuser.

Bellows v. Todd.

error. It ought to have been given. The articles óf incorporation were introduced in evidence, and no objection is made to them either in form or substance. The State has so far recognized the validity of the corporation as to enter into contracts with it, and convey to it the lands in controversy. Surely no mere irregularity in the mode of doing the corporate business, so long as the State permits the corporate character to exist, would deprive the corporation of the right to hold the real estate conveyed to it, or of the power to alienate it. Even in an action brought by a corporation, it cannot be shown in defense that the charter was obtained by fraud, nor that the plaintiff has forfeited its right by misuse or non-user. Advantage of such forfeiture can be taken only on process on behalf of the State. Angell & Ames on Corporations, section 636, and cases cited. *A fortiori*, in an action to which the corporation is not a party, brought by one deriving title through the corporation, irregularities in the mode of transacting the corporate business cannot be shown for the purpose of defeating such title.

IV. The court, upon request of defendant, charged as follows: "2. The defendant further asks the court to charge 5. TITLE: recovery of real property. that the plaintiff can recover only upon the strength of his own title; that he must show a documentary title by deeds, patents, certificates or otherwise from the United States to himself; that as to lots 3 and 4 he has shown no such title."

This instruction is sustained by the evidence. The testimony shows a conveyance of lots three and four in controversy from the Des Moines Navigation and Railroad Company to Robert J. Hubbard, and a conveyance of said lots from Grace H. and E. C. Litchfield to plaintiff. But no conveyance to Grace H. and E. C. Litchfield is shown. As to these lots the plaintiff has failed to show title, and the verdict against him is right.. As to them the judgment is affirmed. Respecting the remainder of the land it is

REVERSED.