AT

## DES MOINES, JUNE TERM, A. D. 1886,

IN THE FORTIETH YEAR OF THE STATE.

---

· PRESENT:

HON. AUSTIN ADAMS, CHIEF JUSTICE.
  " WILLIAM H. SEEVERS,
  " JOSEPH R. REED,
  " JAMES H. ROTHROCK,  } JUDGES.
  " JOSEPH M. BECK.

---

## KNOWLES v. BROWN.

1. **Adverse Possession:** TENANT IN COMMON AGAINST CO-TENANT: EVIDENCE. The possession of a tenant in common is not necessarily adverse to his co-tenant; but it may become such, and is to be regarded as such where the tenant in common holds possession under a claim of entire ownership, and the co-tenant has knowledge of it. And it is not necessary to show such knowledge by direct and positive evidence, but it is sufficient if the contrary is not shown, and the circumstances are such that such knowledge may reasonably be presumed. (Compare *Laraway v. Larue*, 63 Iowa, 407.) The evidence in this case (see opinion) *held* to establish a claim of title by adverse possession.

*Appeal from Black Hawk Circuit Court.*

WEDNESDAY, JUNE 9.

ACTION to quiet title to eighty acres of land in Black Hawk county. It is undisputed that the plaintiff owns an undivided three-fourths of the land. The defendant, Brown, claims the ownership of an undivided fourth. The legal title to one-fourth appears to be in Brown; but the plaintiff, Sarah A. Knowles, and her husband, George A. Knowles, now deceased, under whom she claims, appear to have been in possession for more than twenty years, and the plaintiff avers that they have been in possession under claim of entire ownership, and under such circumstances that their possession was adverse to all the world, including the defendant, Brown. He denies that the possession was adverse. The court rendered a decree for the plaintiff. The defendant appeals.

*H. C. Hemenway* and *A. F. Brown*, for appellant.

*Boies, Husted & Boies*, for appellee.

ADAMS, CH. J.—Much oral evidence was introduced, against the objection of the defendant, for the purpose of showing that the defendant did not acquire by his deed any beneficial interest in the land, but that the beneficial owner was, until his death, the plaintiff's husband, George A. Knowles. The objection urged to the evidence was that for the purpose mentioned it was inadmissible under the statute of frauds. Whether the objection was well taken we need not determine. If we should concede that it was, and that the defendant's legal title must, under the evidence, be regarded as having constituted him a tenant in common, we should still have to say that it appears to us that the possession of the plaintiff's husband became adverse as early as 1857 or 1858, and remained so from that time. In one or the other

of those years Knowles built a valuable farm-house upon the the land, and commenced occupying it as a homestead. He fenced and improved the land, and supported a large family from it. He always kept the taxes paid, except at one time a tax title accrued in favor of one Moore, but Knowles bought it in.

There would be no question but that Knowles' possession was adverse, but for the fact that he was the legal and equitable owner of an undivided three-fourths of the land, and the defendant claims that Knowles' possession was that of a mere tenant in common holding for himself and his co-tenant. The doctrine is elementary that the possession of a tenant in common is not necessarily adverse to his co-tenant. It may, however, become such, and is to be regarded as such where the tenant in common holds possession under a claim of entire ownership, and the co-tenant has knowledge of it; and it is not necessary to show by direct and positive evidence that the co-tenant has such knowledge. It is sufficient if it is not shown otherwise, and the circumstances are such that it may reasonably be presumed that the co-tenant has such knowledge. *Laraway v. Larue*, 63 Iowa, 407.

We have, then, to inquire what is the evidence that Knowles held possession under a claim of entire ownership, and what is the evidence that Brown knew it. It is undisputed that in 1855 Knowles was sole owner; that in that year a scheme was devised by him and Brown and one Chapman and several others to lay out a town upon this land, and procure the location of the county-seat of Black Hawk county upon it. In pursuance of this plan, Knowles deeded an undivided three-fourths of the land to Chapman, and Chapman deeded an undivided one-fourth to Brown. As to what the agreement was in respect to the disposition that should be made of the title in case the scheme failed for locating the county-seat upon the land, there may be no competent evidence; but it is clearly enough shown that Knowles understood that the title, so far as he parted with it, was, in case of fail-

ure of the scheme, to be reconveyed to him. In 1857 the county-seat was located elsewhere. Knowles then applied to Chapman for the reconveyance of the title to an undivided half still held by him, and such reconveyance was made. This was based upon a claim of right by Knowles, and was acceded to by Chapman without objection. About the same time Knowles made application to Brown to reconvey the title to an undivided ·fourth, but by Brown the application was refused. Precisely what was said between Knowles and Brown at that time is not shown, but the evidence taken together, and especially the testimony of Chapman, leaves but little doubt in our minds that Brown understood that Knowles claimed a reconveyance as a matter of right. Whether Brown knew that Knowles was occupying the land is not quite so clear, but we think that he did. It is shown that, when Knowles and wife conveyed to Chapman in 1855 the deed was executed in Knowles' house, standing near the land in question, and that the land, though not then cultivated, constituted a part of Knowles' farm. Brown went with Chapman to Knowles' home at that time, and acted as notary public in taking the grantor's acknowledgment of the deed. Brown continued to live for twelve years in the same county, during nine or ten years of which time Knowles had a valuable dwelling-house upon the land, and was supporting his family from· it. It is true that Brown testified that he did not see the land after Knowles commenced cultivating it, and did not inquire about it, and did not and could not say that it was improved; but he does not say that he was not informed of Knowles' occupancy. We think that the possession was of such character, and so long continued, and the circumstances otherwise were such, that notice of Knowles' occupancy must be presumed to have come to Brown. If we are correct, Knowles held adverse possession for more than ten years, and we think that the plaintiff's claim must be sustained.

No question has been raised in regard to the right of the

plaintiff to set up adverse possession as a ground of relief. The case is tried in this court, and appears to have been tried below, upon the theory that, if Knowles had such adverse possession that it would have constituted a good defense in an action against him for the recovery of the land, the plaintiff's title should be quieted. Treating the case as it has been presented by counsel upon both sides, we have to say that we think that the decree must be

AFFIRMED.