HARVEY G. WILBUR v. THE CEDAR RAPIDS AND MISSOURI RIVER RAILWAY COMPANY and THE IOWA RAILROAD LAND CO., Appellants.

**Adverse Possession:** *Entry under subsequently cancelled homestead entry.* Though plaintiff entered on land as a homestead claim, his possession, after title was passed by the government to a railroad and the entry was cancelled without notice and on *ex parte* hearing, the entry will be held adverse, he having fenced the land, cultivated what was suitable for wheat, used the remainder for other purposes, planted an orchard, erected a new house and paid taxes.

**Evidence:** LETTER OF LAND COMMISSIONER: *Hearsay.* A letter from the commissioner of the general land office to the register of the land office, stating that cancellation of homestead entry was because of its conflict with selections under a grant to a railroad is hearsay; the records of the department of the interior being necessary to show that the land was within the grant.

*Appeal from Hamilton District Court.*—HON. B. P. BIRD-SALL, Judge.

WEDNESDAY, FEBRUARY 12, 1902.

ACTION to quiet title. The cross petition demanded the same relief. Decree was entered quieting title in plaintiff, and defendants appeal.—*Affirmed.*

*Charles A. Clark & Son* and *Wm. G. Clark* for appellants.

*D. C. Chase* for appellee.

LADD, C. J.—One Devore took possession of the 40 acres of land in controversy by hauling logs on it in 1864,

VOL. 116 IA—5

and the year following built a log house and broke 27 acres. He occupied it as a claim merely until the fall of 1866, when he sold out to plaintiff on the condition of the latter being able to enter it as a homestead. The consideration was $200, for which a receipt was given, but no conveyance was executed. Plaintiff took possession immediately, knowing title to be in the United States, and continued in the open and exclusive occupancy of the land until the spring of 1899,—more than 32 years. Soon after going into possession he fenced and ditched the land and built a granary and a stable thereon. Later he set out an orchard and grove, and 14 years ago erected a dwelling house thereon at a cost of $600. In February, 1867, he entered the 40 as a government homestead, taking the receiver's receipt for $14. This was canceled by the commissioner of the general land office March 23, 1869, as being in conflict with selections made by the Cedar Rapids & Missouri River Railroad Company under the land grant of congress approved May 15, 1856, as amended June 2, 1864. The register of the local office at Ft. Dodge was promptly advised of this action, but for some reason plaintiff was not notified until 1871. He made no application to have the entry reinstated, nor did he contest the ruling in any way. In the meantime—April 20, 1869—this with other lands was certified by the secretary of interior to said railroad company, and was by it conveyed to the Iowa Railroad Land Company by quitclaim deed, September 15, 1869, which was recorded a year later. When this land was selected by the railroad company we have no definite means of knowing. The map of the modified line filed in the general land office undoubtedly pointed out all land within the six-mile limit, and tracts beyond that must have been selected in order to detach from the public domain subject to homestead entry. *Cedar Rapids & M. R Co. v. Herring,* 110 U.

S. 27, (3 Sup. Ct. Rep. 485, 28 L. Ed. 56); *Sioux City & Iowa Falls Land Co. v. Griffey,* 143 U. S. 32, (12 Sup. Ct. Rep. 362, 36 L. Ed. 64). True, it is stated in the letter to the receiver at Ft. Dodge that the cancellation of the homestead entry was because of its conflict with selections made under the grant, but this is in the nature of hearsay, and not competent to show what was in fact done. Indeed, the approval of the list including this land does not appear to have been made by the secretary of interior until April 20, 1869. If this 40 was within the place limits, or had been selected in lieu of that lost therein from the indemnity lands, the record of the department of the interior so indicated, and an exemplification of such record was necessary to establish the fact. Indeed, as this tract is in Hamilton county, and under the act of congress the company was bound to construct the road through Boonsboro, Boone county, it may well be suspected that this 40 is within the indemnity limits. But on this point, as said, there is no proper evidence, and the record does not indicate the tract to have been withdrawn from that portion of the public domain subject to homestead entry prior to its actual certification. The cancellation of the homestead entry was without notice to plaintiff, and as the result of an *ex parte* proceeding. The fees by him paid were not returned. He had been in possession in compliance with the homestead law nearly four years before receiving notice of the action of the commissioner, and the cancellation of his entry without an opportunity of being heard is entitled to little or no weight as an adjudication. The necessity of notice in such cases is clearly recognized in *Cornelius v. Kessel,* 128 U. S. 456, (9 Sup. Ct. Rep. 122, 32 L. Ed. 482); *Brown v. Hitchcock,* 173 U. S. 473, (19 Sup. Ct. Rep. 485, 43 L. Ed. 772). This much is said not to question but that the government passed the legal title to defendant's grantor, but to show that there is some basis for the plaintiff's claim of right under which

he has been in possession. See *Bisson v. Curry,* 35 Iowa, 72. True, the statute of limitations did not run as against the government, but nevertheless an individual may claim adversely to the United States. *Chicago, R. I. & P. Ry. Co. v. Allfree,* 64 Iowa, 500. The record of the defendant's deed charged him with notice that it, and not the government, held the legal title, and his possession thereupon ceased to be subservient to that of the government. He was in possession for 30 years thereafter, during which time defendant indicated its intention in no other way than by paying the taxes from 1870 to 1878 and from 1881 to 1885. In his testimony plaintiff referred to the title as his, and declared nobody had questioned it in any proceeding for 30 years. He fenced the land soon after taking possession, cultivated that suitable for wheat purposes continually and used the remainder for other purposes. Trees were planted nearly every year during his occupancy, and an orchard many years ago. In 1885 he erected a new house, and has paid all the taxes for the last 13 years. Continuous and uninterrupted possession will not alone establish a claim of right; neither will payment of taxes; but when, with these circumstances, it also appears that the party has set out trees, erected a house and outbuildings, inclosed the premises by fence, cultivated the land, and in all respects treated it precisely as his own, a claim of right may be inferred, and treated as fully established as though shown by oral declarations of such claim. As said in *Barnes v. Light,* 116 N. Y. 34, (22 N. E. Rep. 441), "A claim of title may be made by acts alone quite as effectually as by the most emphatic assertions." In *Magee v. Magee,* 37 Miss. 138, there was no avowed claim of right, but the court held this might be inferred from the acts of those in occupancy; saying, "In old and thickly populated countries, 'digging stones or turfs, as in England, with an occasional cutting of timber, are acts of ownership, from which the jury may infer

an adverse holding.' Almost everywhere it is held that ac-
tual cultivation of the soil and the erection of permanent
and valuable improvements are circumstances from which
the same conclusions may legitimately be drawn." Again,
in *James v. Railroad Co.* 91 Ill. 554. "No. mere words
could more satisfactorily assert that the defendant claimed
title than continued exercise of acts or ownership over the
property for a period of more than 20 years. Using and
controlling property as owner is the ordinary mode of assert-
ing a claim of title, and, indeed, is the only proof of which
a claim of title to a very large proportion of property is sus-
ceptible." See, also, *Faloon v. Simshauser,* 130 Ill. 649,
(22 N. E. Rep. 835). We think the circumstances proven
fully warranted the court in inferring the *quo animo* of the
plaintiff in retaining and occupying the land in controversy.
The intention with which property has been held is, as of-
ten declared, the test of adverse possession, and, notwith-
standing this was originally taken as subservient to the gov-
ernment's title, we think that it may be fairly found that
subsequent to the time legal title passed to defendant, in
the light of the facts stated, the claim of right was assert-
ed as against all the world, and that the plaintiff was en-
titled to the relief granted. See *Cole v. Railroad Co.,* 76
Iowa, 185; *Schlawig v. Purslow,* 8 C. C. A. 315, (59 Fed.
Rep. 848). The facts distinguish from the case from *Bellows
v. Todd,* 39 Iowa, 209, and *Litchfield v. Sewell,* 97 Iowa,
247.—AFFIRMED.