## LEWIS D. ALBRIGHT v. TABITHA D. ALBRIGHT.

**Gifts:** EVIDENCE: ADMISSIONS OF A DECEDENT. The verbal statements or admissions of a deceased person are not alone ordinarily sufficient to establish a gift, but are admissible in evidence; and if other facts and circumstances are shown which fairly tend to show the alleged gift such admissions are often of much value in determining the controversy. In this action the evidence as a whole is held sufficient to establish a gift of real property by decedent to plaintiff.

**Same:** SELF-SERVING DECLARATIONS. The admissions of a donor or grantor which are against his own interest or title, are ordinarily admissible against his devisees or heirs, but his declarations at another time and in his own interest are not competent evidence.

**Parol gift of land:** POSSESSION AND IMPROVEMENT: EVIDENCE: STATUTE OF FRAUDS. In this action to establish a parol gift of land it was shown that the donee went into possession a number of years prior to the death of the donor and remained in possession until after his death without rent, making various improvements, consisting of clearing the land of stumps and trees, the erection of new buildings and repair of old ones, in the aggregate amounting in value to several hundred dollars, and all of a permanent character. *Held,* there was a sufficient showing of permanent improvement to satisfy the statute of frauds and to support a finding of a gift rather than a mere intent to make a gift in the future.

**Same:** ACQUIESCENCE: ADVERSE POSSESSION: ESTOPPEL. Where the plaintiff, as in this case, entered into possession of real estate under an alleged oral gift and for many years occupied, managed and controlled it as his own without objection or protest from the donor, who had full knowledge of the plaintiff's acts of dominion over the property, the donor's widow was estopped to claim title adverse to plaintiff.

**Wills:** ELECTION BY WIDOW: NOTICE. A widow is not required to make her election to take dower rather than accept the provisions of the will for her benefit, until notice has been served requiring her to elect as provided by the statute.

*Appeal from Clinton District Court.*—HON. A. P. BARKER, Judge.

MONDAY, DECEMBER 18, 1911.

ACTION in equity to quiet title to real estate. There was a decree for the plaintiff, and defendant appeals.—*Affirmed.*

*Skinner & Coe,* for appellant.

*Wolfe & Wolfe,* for appellee.

WEAVER, J.—It is conceded that A. J. Albright, now deceased, was at one time the owner of the land in controversy. The plaintiff claims the property under an alleged gift from the deceased and by adverse possession. The defendant, the widow of A. J. Albright, asserts title to the same tract under the will of her said husband, which has been duly probated. The trial court, after hearing the testimony, found that the gift was made to plaintiff as alleged, and that he took and held possession thereunder, but that he had not sufficiently shown any permanent improvements made on the land in reliance upon such gift. The court further held and found that while the gift did not, for the reason mentioned, become consummate as such, plaintiff's possession and claim of right thereunder for more than ten years was sufficient to perfect the title in him by adverse possession. A decree was therefore entered quieting title in plaintiff, except as against the defendant's claim of dower to which the court held it was subject. Both parties appeal; but, the defendant's appeal being first perfected, she alone will be spoken of in this opinion as appellant.

The case as made by the plaintiff tends to show that A. J. Albright was in his lifetime a man of considerable

wealth, and died possessed of a large estate. He had no children, but plaintiff in this case was a nephew, whom, when a small boy, he took into his family, giving him nurture, care, support, and education such as a parent ordinarily provides for a child. Plaintiff remained a member of the family until he arrived at his majority in the year 1896, when he married and went into possession of the "Mill Farm," which is the name by which the witnesses designate the tract now in dispute. This possession he claims to have taken pursuant to a gift of the land from his uncle, and to have maintained the same adversely till the death of the latter some fourteen years thereafter. To corroborate and sustain this claim, a large amount of testimony was introduced concerning statements made by A. J. Albright respecting the alleged gift, his conduct with reference to the land, and plaintiff's possession thereof. It is too voluminous to justify its incorporation *in extenso* in this opinion, but may be briefly stated as follows:

One witness informed said Albright of his desire to purchase a farm, and the latter advised him to buy "that place of Lewie's," referring to the land in question, and, when the witness said he did not have sufficient means to make the purchase, Albright suggested that he himself would advance him the amount necessary for that purpose. Another witness had negotiation with plaintiff looking to an exchange of the Mill farm for town property, pending which witness asked A. J. Albright concerning the matter, and was told by him that, if he (Albright) was to do the trading, he would not make the exchange, but "it would be up to Lewis, that he had given him the farm, and whatever he would do was all right." The same witness says Albright often referred to the matter, saying: "He had given the farm to Lewis." To another witness who had formerly talked of buying the farm he said: "You made a mistake that you did not buy it that time. Now, I have given

*1. GIFTS: evidence: admissions of a decedent.*

it to Lewis." To another who approached him on the subject of renting the land he said: "The rent belongs to Lewis." To another he proposed to sell the Mill farm, saying: "It isn't mine. It is Lewis', but I have a letter from him to sell it and send him the money." He made a similar statement and proposition on different occasions to two other witnesses. To a relative of the family he said he had given away a part of his estate, and given the Mill farm to Lewis. Later, and within a year or two of his death, he said to the same witness he had given the Mill farm to Lewis a long time ago. The statements of some of these witnesses were varied somewhat on cross-examination, but were not, we think, materially weakened. The plaintiff himself testifies to the gift and the circumstances of the transaction, but his competency as a witness is challenged, and we must consider his claim in the light of facts otherwise made of record. Evidence of verbal statements and admissions of the deceased are of themselves alone ordinarily insufficient to estalish a valid gift, but they are admissible in testimony, and, if other facts and circumstances are adduced which fairly tend to show the alleged gift, such admissions may be of much value in arriving at the truth of the controversy.

Of the additional circumstances relied upon by the plaintiff we refer to the following: He arrived at his majority and married in the year 1896, the date of the alleged gift. Two or three months after that date, he moved upon and took possession of the Mill farm, and personally occupied the same for four years. He paid no rent to his uncle. His possession, use, and enjoyment of the premises and of the produce thereof was exclusive. He made various improvements on the premises in the building of hog-houses and corn-cribs and renovation of old buildings and the grubbing of trees to an aggregate amount estimated by him of about $600. At the end of the fourth year he leased the land in writing, and in his own name as lessor,

for a term of ten years, and went with his wife to the western part of the state. To secure payment of the rent, he took from the tenant twenty promissory notes of $425 each, payable at intervals of six months, and placed them for collection and safe-keeping in the bank of which A. J. Albright was president, and took the bank's receipt therefor. This rent when collected by the bank was credited to the plaintiff, and, after charging him with expenditures for taxes, repairs, and collection fees, the remainder was forwarded to him. The buildings were insured, the policies being taken in the name of A. J. Albright, but the bills therefor were sent to the plaintiff, and he paid them. While plaintiff was in the West, more or less correspondence by letter took place between him and A. J. Albright, but, so far as it has been put in evidence, the matter of the ownership of the Mill farm was never mentioned by either party. The ten-year lease expired about the time of the death of A. J. Albright, and thereafter dispute arose between the parties hereto with respect to the title, settlement of which is the object of this proceeding.

The theory of the defendant is that A. J. Albright gave the plaintiff no more than the income from the Mill farm, and did not attempt or undertake or promise to part with the title. In support of this defense, the defendant herself testifies that soon after Lewis married she heard A. J. Albright tell him "he could go down on the Mill farm, and could have what he made off of it," and that within a month or two thereafter Lewis went into possession of the farm. She further says that her husband and herself at one time "talked of giving the farm to Lewis, and fixing it so Lewis and his wife could not handle it, but we never done it." No conveyance was in fact made. In the year 1907, while plaintiff was in the West, deceased advertised an auction sale of certain property, including the Mill farm, but the auctioneer named in the

advertisement testifies upon the trial that deceased told him at the time that the farm belonged to Lewis. No bids being offered in advance of the reserved bid of deceased, the land was not sold. The land was taxed and the buildings insured in the name of A. J Albright, but, as we have seen, the expenditures were, in part at least, charged back to Lewis. Defendant offered other evidence tending to show that, after plaintiff moved away leaving the farm in the hands of tenants, the deceased directed or authorized the digging of a well and cistern, and the making of certain repairs. These bills the records tend to show were in whole or in part charged up to the plaintiff, and deducted from the rent collected. One witness bought from deceased trees' growing on the farm to the amount of $45. To another he offered to sell the farm. To another he made a similar offer, and offered to let the witness have the money with which to buy it. In the presence of another, a member of the family, he said he did not intend to let Lewis have the rent any more after the lease to Brown expired. To another he said that: "Whatever Lewis does on the farm will be to his own interest, because the chances are he will own it some day." The cashier of the bank says that on many occasions the deceased in his presence spoke of the farm, denied the authority of Lewis to rent it, and was dissatisfied with his management generally. There is no evidence that any of these statements were made to or in the presence of plaintiff. It is also shown that while plaintiff was in the West he negotiated a deal for the sale or exchange of other land owned by A. J. Albright upon terms which involved him in some debt to the latter, and in writing about it he reassured his uncle of his ability to pay the debt by mention of the property owned by him in Western Iowa, and South Dakota, but made no mention of the Mill farm.

Most of the testimony which we have referred to on both sides was introduced over objections to its competency

and materiality.  After a careful reading of the entire record, it must be said that, assuming the truth of the evidence offered by the plaintiff, the theory of a gift as claimed by him has very strong support, while there is very little of the evidence on behalf of the defense which is not reconcilable with that view of the case.  The statement of A. J. Albright to plaintiff that he could go upon the farm, and have what he could make off of it, was made in January, 1896.  Plaintiff did not go upon the farm until March of that year, and there is no necessary connection between these facts.  There is no testimony that Lewis assented to the offer at the time it was made, or expressed any purpose to take possession under it. The defendant says she never heard deceased mention the subject again, though he did afterward consult with her about giving the land to Lewis, and fixing it so Lewis and his wife could not handle it.  His offers to sell the land are entirely consistent with the testimony of plaintiff's witnesses that he said he was trying to sell it for Lewis.  His interest in looking after the land in the absence of Lewis may well be regarded as the natural solicitude of one standing in the place of foster parent to the plaintiff, and the deduction of the expense so incurred from the rents collected for Lewis is quite inexplicable, save on the theory that he was dealing with plaintiff's land, and not his own.  The record reveals not a word of objection from A. J. Albright to plaintiff or in his presence concerning the latter's notorious exercise of dominion and acts of ownership over this land for a period of fourteen years. The only showing of any statement on his part inconsistent with the theory of gift is found in alleged conversations with third parties after the date of the alleged gift, and after plaintiff had assumed possession and control of the property.

The incompetency of such evidence is apparent. While the declarations of a grantor or donor against his

own interest or title are ordinarily admissible in evidence
against his heirs and devisees, his declara-

**2. SAME: self-serving declarations.** tions at another time in his own favor are
incompetent. *Lewis v. Adams,* 61 Ga. 559;
*Fellows v. Smith,* 130 Mass. 378; *Julian v. Reynolds,* 8
Ala. 680; *Newman v. Wilbourne,* 1 Hill Eq. (S. C.) 10;
*Matteson v. Hartmann,* 91 Wis. 485 (65 N. W. 58); *Van
Fleet v. Van Fleet,* 50 Mich. 1 (14 N. W. 671); *Robbins
v. Spencer,* 140 Ind. 483 (38 N. E. 522, 40 N. E. 263);
*Harness v. Harness,* 49 Ind. 384; *Thistlewaite v. Thistle-
waite,* 132 Ind. 355 (31 N. E. 946); *Davis v. Melson,*
66 Iowa, 715; *Ellis v. Newell,* 120 Iowa, 71; *Royal v.
Chandler,* 79 Me. 265 (9 Atl. 615, 1 Am. St. Rep. 305);
Greenleaf's Evidence, section 189; *Padgett v. Lawrence,*
10 Paige (N. Y.) 170 (40 Am. Dec. 232); 2 Wigmore's
Evidence, section 1080; 1 Elliott's Evidence, sections 267-
269. The case has many points of similarity with the one
treated by us in *Bevington v. Bevington,* 133 Iowa, 351,
where we held the gift to have been sufficiently established.

It is said, however, that the plaintiff in this case has
made no sufficient showing of improvements on the land in
reliance upon the gift to him. It is true that the improve-
ments shown are not as valuable as were

**3. PAROL GIFT OF LAND: possession and improvement: evidence: statute of frauds.** those in the *Bevington* case, but they were
such as perhaps the majority of young farm-
ers just beginning life would be likely to
make, small structures suited to his present needs and to
the convenient use of the land. "Permanent improve-
ments" are not necessarily everlasting in character, but are
such as rest upon, or are attached to, the soil, are rea-
sonably enduring, and not intended for removal at the
end of a limited term. Other beneficial changes in the
premises, like the moving of buildings, the construction of
roads or grubbing of stumps and trees, may be treated as
permanent improvements. It is insisted in argument that
because the improvements claimed to have been made by

plaintiff do not aggregate a large sum, and would be more than equaled by the rent of the land, it should not be considered in support of the alleged gift. But we are not aware that the amount of improvements made by a donee of land is a controlling factor in such cases.

If it is enough to show good faith on his part and render it inequitable in the donor to repudiate the gift, the law is satisfied, and the donee's title will be sustained. It is no answer to compare the amount of improvements with the rents and profits derived from the land. If there was a gift, it carried with it the rents and profits, and money so derived belonged to the plaintiff as completely as if it had been earned or received by him from a wholly independent source. It is the theory of the defendant herself that there was a gift to the plaintiff of the use of the land. The improvements are not to be considered as in any sense or degree affording a consideration for the gift. A gift is a gratuity, and *ex vi termini* negatives the idea of consideration passing from the donee to the donor, and, if the donee signifies his acceptance by taking possession of the premises, and upon faith of the gift expends time, labor or money in improvements, which the donor can not in equity and good conscience be permitted to ignore, the transaction is irrevocable.

It is further argued that, at best, the plaintiff's evidence shows an intent on part of the deceased to make a gift of the land in the future. Some of the testimony on both sides is capable of that construction, but a declaration at one time of an intent to give and at another of a gift in fact are not necessarily inconsistent. Again, so long as no deed of conveyance was made or delivered, the gift could do no more than vest the plaintiff with the equitable ownership, and declarations of intent thereafter made by the deceased may reasonably have had reference to his purpose to perfect the legal title in plaintiff by proper conveyance. Speaking to the same point in the *Bevington*

case, we said: "That proposition may be true as to some
of the witnesses; but, while the statements repeated by
them do tend to show a mere intention, they are followed
and supported by others clearly tending to show a gift
actually made, and altogether make up a formidable case."
In the same connection we may also here repeat what
we there said as to the *quantum* of proof required to es-
tablish such a gift: "Undoubtedly it will be upheld only on
a clear and unequivocal showing. This does not mean that
the proof in support of the gift must be undisputed. Such
a rule would mean in practical operation that no contested
claim of gift could ever be established. The law requires
no more than that the result shall not be reached by a
mere balancing of doubts or probabilities but by clear and
unequivocal proof of facts upon which the court or jury
may reach a reasonably satisfactory conclusion. In other
words, the rule does not require absolute certainty, but
reasonable certainty, of the truth of the ultimate fact in
controversy."

Observing that rule, we are led to the conclusion that
plaintiff's claim of gift is sufficiently established. More-
over, as pointed out by the trial court, plaintiff's posses-
sion was assumed fourteen years before the death of A. J.
Albright. While he does not claim to have received a con-
veyance of the legal title, his conduct has been that of one
in possession under a claim of right to the title. His atti-
tude has not been that of a mere tenant at will or at
sufferance.

As we have already noted, it is very significant that
during this entire period of fourteen years there is no evi-
dence tending to show that A. J. Albright ever in person,
or by letter or by agent, addressed a word of
4. SAME: acquiescence: adverse possession: estoppel.  objection or protest to the plaintiff against
his assumption of dominion over the land,
a thing which could hardly be possible if as
defendant's principal witness seems to intimate deceased

resented such conduct, and denied to the witness (not to plaintiff) the authority of the latter to lease or otherwise use the land as his own. Under such circumstances, we think it is now too late for the appellant to set up claim to title adverse to the plaintiff. That A. J. Albright intended to give the land to the plaintiff is shown beyond room for reasonable doubt. That he made that intent effective by a gift in fact is shown by a satisfactory preponderance of the evidence; and this conclusion is confirmed by the conduct of the parties and the possession of the land by plaintiff, claiming and exercising dominion over it for a period more than equal to that fixed by the statute of limitations.

We can not attempt to discuss all the points made by counsel within the permissible limits of his opinion. They are as a rule governed by the conclusions we have already announced, and we find therein no sufficient reason for interfering with the finding of the trial court on this branch of the case.

The question raised by the plaintiff's appeal is not wholly free from doubt, but we incline to the view that, under the record as here presented, the decree below awarding dower in the land to the defendant must be upheld. It is to be admitted that under the statute (Code, section 3270) the provision made for her in the will is presumed to have been intended in lieu of dower, but she can not lawfully be denied her right to elect between the devise and her statutory share (Code, section 3376), and she is not put to her election until notice so to do is given her (Code, section 3377). No such notice is shown. Whether demanding and taking dower in this case will operate as an election is a question not here presented. It is sufficient that no prior election having been shown, and it being conceded that her husband was seised of the land during the existence of their marriage relation, and that she has never

5. WILLS: election by widow: notice.

relinquished her dower right, it follows of necessity that her demand for its enforcement must be respected.

If, as plaintiff argues, the dower should be taken from other lands of which A. J. Albright died seised, the burden of showing the existence of such lands and their value would seem to be on the plaintiff. There is no allegation or sufficient proof on that subject.

The decree will therefore be affirmed upon both appeals. A motion to strike appellant's amended abstract has been submitted with the case. The amendment has been useful in making clearer some matters of evidence, and we are disposed to hold it was properly filed. The motion is denied.—*Affirmed.*