CONSOLIDATED SCHOOL DISTRICT OF ELLSWORTH, Appellee, v. JOHN THOMPSON, Appellant.

**ADVERSE POSSESSION:** School Districts.  A school district which,
1  *without any formal conveyance to it*, takes possession of a tract of ground, fences it, builds a schoolhouse thereon, there maintains a school, and openly, continuously, and exclusively maintains such condition without question for some 35 years, must be held to have an impregnable title by adverse possession.

**ADVERSE POSSESSION:** Hostile Possession—"Claim of Right" Presumed. That an occupancy was under a "claim of right" may be *inferred* from the exclusiveness of possession, from the making of improvements, and from the exercise of notoriously appropriate acts of ownership over the property for the statutory period.

**DEEDS:** Nature and Essentials—Quitclaim From Stranger. A quitclaim deed from the heirs of one who has lost all title because of adverse possession in another, is simply a deed from a *stranger to the title.*

**SCHOOLS AND SCHOOL DISTRICTS:** Schoolhouse Sites—Forfeiture of Right of Reversion. The right of a property owner to a reversion of a schoolhouse site which has been carved out of his farm may be forfeited by a failure to meet the statutory conditions to such reversion.

*Appeal from Hamilton District Court.*—E. M. MCCALL, Judge.

MARCH 11, 1919.

OPINION ON REHEARING SEPTEMBER 26, 1922.

ACTION in equity, to quiet title to real estate. Decree for plaintiff, and defendant appeals.—*Affirmed.*

*D. C. Chase,* for appellant.

*Burnstedt & Hemingway,* for appellee.

PER CURIAM.—Upon the original submission of this case, an opinion was filed affirming the decree of the district court. See 171 N. W. 16. Thereafter, a rehearing was granted on defendant's petition, and counsel have since filed additional briefs. In the affirming opinion referred to, this court held the defendant estopped to deny the plaintiff's title, and therefore did not discuss the merits of the dispute upon other issues. Of this the appellant complained because, according to his theory, the estoppel, if any, of the defendant to assert title did not necessarily establish title in plaintiff; and he further insisted that plaintiff had wholly failed to show any title in itself.

I. Passing, for the present, the question of estoppel, let us consider the situation as revealed by the testimony. For a period of years prior to 1880, a district schoolhouse had been located and maintained at the common corner of

1. ADVERSE POS-
SESSION: school
districts.

Sections 29, 30, 31, and 32, in what was known as Lincoln District Township, in Hamilton County. As at first located, it stood on the southeast corner of Section 30. In the year 1880, a railroad company, desiring to open a right of way at that point, negotiated a plan to have that site abandoned, and relocated on the opposite corner, being the northwest corner of Section 32. At that time, the last described quarter section was owned by one Henry Larson. The details of this arrangement are not very clearly shown, but it fairly appears that the railway company assumed the burden of the expense incident to the change, and that Larson acquiesced therein, and himself assisted in moving the schoolhouse to its new site. This site of about one acre was then taken possession of by the school district, and separated from the remainder of the quarter section by a fence. This house and the ground were occupied and exclusively controlled by the district for school purposes from that time until about the year 1915, when the district was taken over or absorbed in the newly organized Consolidated District of Ellsworth. After this reorganization was accomplished, the board of directors of the old district executed a quitclaim deed of the premises to the consolidated district. Under circumstances hereinafter mentioned, this property was advertised for sale at auction. The defendant bid on the lot, and it was struck off to him at his offer of $245; but on the alleged ground that the district could not convey a good title, he repudiated his offer, and refused to pay the amount of his bid. Later, he obtained a quitclaim from the heirs of Henry Larson, and under this conveyance, claims to have become vested with the title. Larson, who owned the land at the time when it came into the possession of the school district, is dead. So far as shown, he never at any time denied the title of the district to the property. He was himself director of the district when the change took place, and he had active part therein; and while, for a few years, the entire quarter section

appears to have been assessed to him, this omission was corrected, and thereafter it was exempted from taxation. Later, he conveyed the quarter section to the defendant, excepting therefrom the school site. As a witness, the defendant, who is the son-in-law of Larson, testified:

"I remember when the schoolhouse was moved onto the lot in question, and think it was late in the fall of 1880. There is about an acre in the lot. It has been fenced for many years. When Mr. Larson sold me the land, he sold 159 acres. I paid him for 159 acres. The deed shows that he excepted one acre. The fence around the lot has been kept up since it was put up. I tore the fence down some time after the auction sale, in 1915. I took possession of the lot after the sale. I requested the assessor to omit the property from taxation because it was school property. The school township of Lincoln had complete control all the time of the building and the lot during all these years; they used it as their own; I never exercised any ownership over it. I was a school director a part of the time. I never questioned the right of the school township to the lot, and Mr. Larson, so far as I know, never questioned their right. I lived with Mr. Larson."

Further recitation of the evidence is unnecessary. In our judgment, the record fully sustains the finding of the trial court confirming the plaintiff's claim of title. It is true that no formal deed of conveyance from Larson to the school district is produced or shown by any direct evidence. It is a matter of common knowledge and observation that in very few country school districts can there be found anything like full or complete records of their history and business transactions extending back over a long series of years; and when it becomes necessary to inquire into such matters, much must be left to deductions from circumstantial evidence. In the case before us, every proven act of Larson's in his lifetime is consistent with the conclusion that he recognized this schoolhouse site as the property of the school district. On the other hand, the exclusive occupation, use, and control of the property by the district for a period of more than three times the statutory period of limitations is fairly explicable on no other theory than a claim of right. So

far as appears, during all that time no one disputed or questioned that right, or asserted a hostile title, or demanded rent. Were the original owner, Larson, now living, and should he now come forward, after 35 years of silence and acquiescence in the apparent ownership of the district, and set up a claim to the property, supported by no other proof than the fact that, at one time in the distant past, he had been vested with the title, and that there is no record evidence of its conveyance to the district, no court would hesitate to hold that his claim was barred by the statute, and that the district acquired an impregnable title by adverse possession. In all essential particulars, the case here presented is quite like *Independent District of Oak Dale v. Fagen,* 94 Iowa 676. There, as here, a country school district took exclusive possession of the property in controversy. No formal deed of conveyance was shown, but it did appear that the district put a schoolhouse on the lot, and occupied and used it for school purposes for 30 years, when, owing to a reorganization of the district, the property was no longer used for school purposes, and after an interval of two years, one Fagen set up a claim thereto on the theory that, the use of the property for school purposes having ceased for a period of two years, the title had become vested in him by reversion, as the heir of one Fagen, who had owned the land prior to its appropriation by the district. In support of this claim, he relied upon the statute, Code Section 2816, which provides that, where land acquired for school sites ceases to be so used for the space of two years, the title shall revert to the owner of the fee, upon repayment by him of the principal amount paid for said land, without interest, together with the value of any improvements erected thereon by the school district. Under those circumstances, the school district, as in the present case, brought suit in equity, to quiet its title, and the relief so prayed was granted. In affirming the decree on appeal, this court said:

"The occupation and use of the lot for school purposes by the district township and by the plaintiff were continuous from the year 1861 until two years before this action was commenced. It does not appear that during that time any claim to the property adverse to the plaintiff or its predecessor was made by any-

one. * * * The evidence in this case shows, beyond question, and without conflict, that the lot in controversy was occupied and used by the district township * * * openly, continuously, and exclusively for nearly 30 years, and that the occupation and use were adverse, and for purposes authorized by law. It is claimed that Fagen merely permitted the use of the property for school purposes, without any intent to transfer an absolute title to it. Although there is but little direct evidence to that effect, the only reasonable conclusion which can be drawn from the evidence in the case is that the occupation by the district was under a claim of absolute ownership. Hence, *even if it were true that the property was not sold by the deceased to the district township, the use and occupation of it which we have stated were sufficient to give the plaintiff a perfect title, as against the defendants.* Actual adverse possession of real estate for ten years, under a claim of absolute ownership, creates a title by prescription, not merely for defensive, but for all practical purposes, upon which an action to quiet the title may be maintained.''

The general principles applicable to claims of title by prescription or adverse possession are too familiar to call for further discussion at this time. For illustrative precedents, see *Cramer v. Clow,* 81 Iowa 255, 257; *Quinn v. Quinn,* 76 Iowa 565; *Stevenson v. Polk,* 71 Iowa 278, 286; *Griffith v. Murray,* 166 Iowa 380; *Dwyer v. Christianson,* 188 Iowa 686; *Detrick v. Patterson,* 159 Iowa 460.

That the occupancy by the district was under a claim of right need not be shown by any specific declaration of the occupant's, but may be inferred from the fact of its exclusive possession, making improvements on the property, and by openly and notoriously appropriate acts of ownership over it for ten years or more. *Hanson v. Gallagher,* 154 Iowa 192, 196.

2. ADVERSE POSSESSION: hostile possession: "claim of right" presumed.

We hold that plaintiff very clearly made a good prima-facie showing of title by adverse possession.

II. We think it equally clear that defendant's showing is insufficient to overcome the prima-facie case made by the plaintiff. The quitclaim deed from the heirs of Larson conveyed no

3. DEEDS: nature and essentials: quitclaim from stranger.

title. His grantors had no title to convey, for it had already vested in the district, long before the conveyance; and as grantee in a quitclaim deed from a stranger to the title, he could assert no right in hostility to one who had acquired title by adverse possession. Counsel for appellant assume that the position of the district in this case is that of a claimant of a mere easement, and cite us to the statute, Code Section 3004, and our prior decisions thereunder, to the effect that an alleged easement by adverse possession shall not be held established by proof of its use, but that the fact of adverse possession thereof must be shown by evidence distinct from and independent of its use, and by proof that the owner against whom the claim is made had express notice thereof. It is manifest that these authorities are not in point in this action. The plaintiff is not attempting to establish an easement in the property. It is asserting paramount title to the property itself, and that claim must be tested by the law hereinbefore cited, by which exclusive possession of real estate, under claim of title as against the world, for a period of ten years, does establish title in the claimant.

III. Nor does defendant show any title in himself under the statute which provides for reversion of schoolhouse sites to the grantors under certain circumstances. The statute does not

4. SCHOOLS AND SCHOOL DISTRICTS: schoolhouse sites: forfeiture of right of reversion.

create any absolute right to such a reversion. It does provide, however, that, in case of the nonuse for school purposes for two years of real estate acquired for a schoolhouse site, it shall revert, with the improvements thereon, to the owner of the tract from which it was taken, *upon repayment of the purchase price, without interest, together with the value of the improvements, to be determined by arbitration.* Code Section 2816. The right so provided is a conditional one. It might easily happen that such right, burdened as it is with the condition precedent for repayment of the purchase price of the land, together with the value of the improvements, may be regarded by the former owner or his heir as of little or no value; and if so, there can be no doubt that he may renounce such right, and refuse to exercise the option so given him. In such case, we see

no good reason why the title of the district may not be regarded as relieved from the cloud of a possible reversion. The record in this case indicates that, after the district ceased to use the property for school purposes, the subject of its disposition came up for consideration between the board of directors and the defendant, who announced that he did not want to take the schoolhouse, but would buy or bid upon the lot. (His statement as a witness is that his offer to buy was limited by a proviso that the district should give him a good title; but whether this be so or not is now immaterial.) In accordance with his desire, the schoolhouse was offered for sale, and sold separately, after which the lot was put up, and struck off to the defendant as the highest bidder. Later, he refused to pay his bid. Thereafter, relying on his alleged title under a quitclaim deed from Larson's heirs, he removed the fence between his farm and the lot in dispute, and assumed and still holds its possession. At no time during these transactions did he make any claim to the reversion or tender, or offer to comply with the statutory condition for the exercise of such right. Under such circumstances, if it might otherwise be said that he did acquire a right to claim the reversion, had he elected so to do,—a question we do not determine,—he is properly held, in equity, to have renounced and relinquished it, and is in no position to complain of the decree quieting the title in plaintiff.

Since writing the foregoing opinion, we notice that, in a reply argument filed by the appellant, it is denied that Henry Larson become the owner of the northwest quarter of Section 30 until after the schoolhouse was placed thereon. This may be admitted, without taking time to examine the record on that point. But admitting the correction, it only increases the difficulty in tracing a title to defendant through an heir of *Larson's*.

For reasons stated, the decree of the district court is—*Affirmed*.