ELIZABETH G. LYNCH, Appellant, v. JOHN A. LYNCH et al., Appellees.

No. 47211.

(Reported in 34 N. W. 2d 485)

1246

November 16, 1948.

Alfred M. Pabst, of Albia, for appellant.

W. G. Goodwin and Hugh W. Lundy, both of Albia, for appellees.

HALE, J.—Elizabeth G. Lynch, plaintiff, is one of the children of Margaret A. Lynch who died intestate in 1925. Margaret was, at one time, the owner of three tracts of land in Monroe county designated by the parties hereto, for convenience, as tracts one, two, and three. Tract one contains one hundred

twenty acres and is referred to as the home farm; tract two contains one hundred twenty acres and is referred to as the south farm, and tract three is a separate ten acres used as a wood lot.

Margaret A. Lynch had six children surviving her, being the plaintiff, Elizabeth G. Lynch, and the defendants John A. Lynch, Thomas J. Lynch, and William P. Lynch, and two other children, Martha A. Lynch and Mary H. Lynch. Martha A. Lynch, in 1945, deeded her share to the tracts of land to the plaintiff, Elizabeth G. Lynch. Before that time Mary H. Lynch had died single and childless and her interest in the estate was inherited by the other children.

On September 19, 1945, plaintiff filed a petition claiming to be the owner of two fifths of the land and alleging her three brothers, John A. Lynch, Thomas J. Lynch, and William P. Lynch each owned an undivided one fifth thereof. She further asked in her petition that she be refunded money advanced by her for taxes; that the defendants William P. and Thomas J. be required to account for rentals, and further asked that the property described be sold; that she be reimbursed for these items of taxes and rent and that the proceeds be divided in accordance with the ownership interest. There were also claims of advancement against John A. Lynch which she asked be charged against his share.

Defendants Thomas J. and William P. appeared and contested the partition proceedings. Thomas J. claimed to be the owner of tract one, the home farm, by virtue of oral gift in 1910 by his parents, and also by adverse possession. William P. claimed to be the owner of tracts two and three by virtue of oral gifts of his parents in 1912, and by adverse possession. They also pleaded laches. There was default against John A. Lynch. In reply plaintiff denied the claims of the defendants, each of whom had filed separate cross-petitions, claiming title and general equitable relief.

The finding of the court was that tract three was owned by the parties in common; that William P. Lynch had established his title by both oral gift and adverse possession to tract two, the south farm, and quieted title thereto except such rights as plaintiff may have by reason of taxes paid; and the court found

that Thomas J. Lynch had established his title by adverse possession to tract one, the home farm, but had not proved any oral gift, and quieted title thereto except such rights as plaintiff may have by reason of taxes paid. The issue of laches was overruled. There was no finding or order as to the rights of the plaintiff for taxes paid except as to tract three, the ten-acre tract, which was the only one partitioned.

. By supplemental findings to the original findings of fact the court further found that the taxes, interest, and penalties paid by plaintiff upon tract one claimed by Thomas J. Lynch were $1097.98, and upon tract two claimed by William P. Lynch, $678.27, and upon tract three, the wood lot belonging to the heirs, $49.21. From the court's findings and decree the plaintiff, Elizabeth G. Lynch, appeals.

The court in an opinion made findings of fact and conclusions of law. Since the issues here are largely those of fact we will summarize the evidence. The record first sets out the relation between the parties and the death of the mother. Administration was had upon the estate of Margaret A. Lynch. Elizabeth G. Lynch, the plaintiff, and Thomas J. Lynch, one of the defendants herein, were appointed administratrix and administrator. During the course of administration of Margaret's estate the administrator and administratrix filed a list of heirs and real estate, verified by both, in which the tracts of real estate are listed, and it is stated that Thomas J. Lynch claimed to own tract one, the home farm, by gift from his mother, and William P. Lynch claimed to own tract two, the south farm, a gift from his parents, and Elizabeth G. Lynch claimed the real estate was a part of the estate. Verification by administrator and administratrix was on February 5, 1927, and the clerk's certificate to the state was dated February 7, 1927. The date stamped by the state treasurer's office, as received, was February 8, 1927, and the estate was exempted from appraisement by court order on February 21, 1927. Final report was filed March 22, 1927. Tract three, the ten-acre tract, was listed in the estate files but is not therein shown to have been claimed individually by anyone. The application for relief from appraisement also states that Monroe county condemned a right of way for which was received $660 damages and fencing, and

that Thomas J. claims said sum "belongs to the land," and Elizabeth G. Lynch claims said sum belongs to the estate of Margaret A. Lynch. There is no accounting of the sum in the final report, verified by both administrator and administratrix, although it recites that the administrators had fully settled the estate except for distribution. The receipts for distribution are attached to the final report, signed by all the heirs except John A. Lynch, whose share was applied on his indebtedness.

The district court in this proceeding finds that there is no direct evidence in the case as to who got the $660 right-of-way money, but it is reasonably inferable from the circumstances that Thomas J. got it, and the court so found.

On the trial Elizabeth G. alleged in her testimony that the notations with reference to the claims to the land by Thomas J. and William P. Lynch in the inheritance papers were inserted after her signature thereto, but on cross-examination admitted otherwise. She further stated that she had no knowledge that her brothers were claiming to own the farms until their cross-petition was filed in this case in 1945, but testified also that they had always claimed them. The district court in this case found that she had so known since her mother's death. Martha A. Lynch quitclaimed all her interest in the real estate involved in this action to plaintiff, Elizabeth A. Lynch, on September 4, 1945.

The court found, and the evidence shows, that William P. Lynch, born in 1883, has had exclusive possession of the south farm since his marriage in November 1912, the date of the alleged gift of the land to him. At that time he was twenty-nine years of age and only about five acres of the land was then cleared and broken. There were only line fences of barbed wire. The rest was largely covered with scrubby timber, with only a few acres of good timber. After his marriage he built good buildings and improved the farm to some extent. The home on the south farm was started before the marriage but finished afterwards. After his marriage and previous to that time he had lived on the home place where he worked for his parents and farmed some rented land for himself. At the time of the trial the south farm was nearly all in cultivation with about twenty-eight acres of timber and permanent pasture, and there

is no dispute but what he paid for all the improvements himself.

The south farm was not a very good farm. It was rough and not very well improved. Nor was the home farm what might be termed a high-class farm. The parties are not directly in dispute as to the rental value of the south farm in recent years, which is fixed at an average of about $2 per acre.

The husband of Margaret A. Lynch died in 1923, was eighty-nine years of age, and had been an invalid for several years.

There was evidence that in August 1922 and other occasions Margaret A. Lynch had stated she gave the south farm to the defendant William P. Lynch when he was married. This testimony was given by Margaret Summers, employed in the Lynch home while attending school at near-by Georgetown. She was seventeen years old when she went to the Lynch home and she remained there about two years. The statements referred to do not allege that Margaret A. Lynch ever said anything about a deed to the premises, nor that William P. Lynch should contribute anything to his sisters. There was other testimony, and soon after William's marriage Margaret A. Lynch wrote a letter to Mary stating she had given the south farm to William, and also testimony by a sister of the plaintiff that there was something said about giving William the south farm, naming it as comprising eighty acres.

The testimony shows that no rent or accounting has ever been previously demanded by legal proceedings by any of the other heirs, that William's possession or right to the south farm has never been disputed until the beginning of this suit, and that he has lived there continuously since his marriage, reared his family there, and that no one else has ever occupied any of the land.

Thomas J. Lynch claiming the home farm, tract one, by gift from his mother is shown by the evidence to have lived on that farm all his life except about nine months, when he did farm work in the north. He was married in 1910 at the age of twenty-nine and has lived on and farmed such land since that time. Objection to the testimony that he offered as to certain circumstances of his remaining in the home and farming the farm was sustained by the trial court. He testified that

before the conversation with his mother it was his intention to leave home. After his mother died he had exclusive possession of the home farm, lived thereon and farmed it, rebuilt and maintained fences, and otherwise farmed and occupied it as his own. He has never paid any rent since 1910, and none of the heirs of Margaret A. Lynch has ever demanded any rent nor contributed to the repairs, maintenance, or improvement of the land. His mother paid the taxes until her death. Thomas paid them from then until 1934. The plaintiff purchased the land at tax sale in 1936 for 1934 taxes and had paid the taxes to and including the first half of 1944, and Thomas has paid them since. He has not maintained the improvements in good shape and the house and barn have not been painted for about twenty years. He made improvements on the farm prior to his mother's death, and substantial though not large improvements since. In addition to the drought years of 1934 and 1936 and the wet year of 1935, when practically no crops were raised, and during the agricultural depression he has had heavy expense, including education of his children and considerable illness in the family including several operations. On at least one occasion he endeavored to pay the taxes but found they had been paid by the plaintiff.

In 1910 and 1911 Thomas farmed the farm for himself, picking up and repairing some discarded machinery of his father's. Thereafter he managed the farm, supporting his parents from the earnings of the farm, including the expenses of his father's illness. Up to the time of his mother's death he had not accumulated any money of his own. The livestock and machinery belonged to his mother and he purchased it from the estate, giving notes therefor. Thomas J. and his mother were held by the lower court not to be partners in the operation of the farm. In recent years Thomas J. has taken part in the Agricultural Adjustment program and received the usual benefits paid. The witnesses indicate that the fair average rental of this farm in recent years is $3 per acre. When the board of supervisors contemplated improvement of the road running through the home farm they went to Margaret A. Lynch and she told them the farm belonged to Thomas and they would

have to deal with him. The arrangement was made with him but the conveyance of the right of way was made after the mother's death and signed by her heirs.

The court's findings of fact also include some history of the transactions of the plaintiff, Elizabeth G., in relation to her employment and operations of the plaintiff, and transactions with other members of the family, but these are not material to the question herein involved.

During the years since the mother's death in 1925 plaintiff and her grantor sister, Martha A., and her sister Mary H., now deceased, had, on a number of occasions, discussed settlement with the defendants Thomas J. and William P. It does not appear from the record that they claimed any title in the land, but that they claimed they were entitled to the payment of money by Thomas J. and William P. Negotiations were attempted, but without result. There was no demand by the sisters for rent. They never contributed to the upkeep or improvement of the farm and never, until this action was begun in 1944, instituted any litigation with reference thereto. Plaintiff knew and mentioned in her testimony the difficult years in the farming country and the misfortunes in her brothers' families. Martha and Mary visited in the brothers' homes, and the taxes paid were paid without request, partly because of the financial difficulties her brothers were experiencing and partly to preserve the ability to make a settlement. As disclosed from the record, there was never any dispute shown as to who owned the land after the estate was closed. The negotiations were as to the amount of money the brothers should pay the sisters.

Mary left home when she was twenty years of age and Martha when she was twenty-one. Both received two years' education at Ottumwa Heights College, paid for from the income of the home farm, then entered convents for further education and later became Nuns.

The district court found that John's share of tract three, if any after payment of costs and expenses, should be applied on his indebtedness, plaintiff to be reimbursed for taxes thereon; and judgment was entered against plaintiff for nine tenths of the costs, the balance to be paid from the real estate ordered

sold, with attorney fees to be allowed plaintiff's attorney on the appraised value of tract three.

I. The preceding rather extensive summary of the facts is necessary because the question involved in this proceeding is largely one of fact. It appears to this court that there can be little doubt as to the ownership of tract two, the part conveyed to William. The evidence clearly shows that whatever his title may have been prior to his marriage that even at that time he was in occupancy, but that with the consent and approval of his mother, the titleholder of all of the land in controversy, William was, by oral conveyance, given the south farm. This is evidenced by the statements of the mother and by all the facts relating to his occupancy. There can also be little doubt that the farm was of very small value, rough and not productive, and by his subsequent acts in relation thereto improvements were added, the land cleared, the value enhanced. No one at any time challenged his right either during the lifetime of his mother or at any subsequent time. He exercised all the acts of ownership, and the fact that such ownership had been transferred to him was apparently well known in the family.

There can be no question that an oral transfer of real estate followed by the taking, possession and occupancy, constitutes a valid conveyance. Oral gifts have frequently been recognized in this state as valid. The proof of such gift should be clear, convincing and satisfactory, and when so established is upheld. Lembke v. Lembke, 194 Iowa 808, 187 N. W. 863, and cases cited; Eggimann-Eckard v. Evans, 220 Iowa 762, 263 N. W. 328, and cases cited.

Nor is it necessary that there be any actual change of possession where the donee is in possession at the time of gift, the change in the character of possession being sufficient. See preceding authorities. Such gifts may be established provided the facts and circumstances fairly tend to show the alleged gift. Lembke v. Lembke, supra. The degree of proof need not be to an absolute certainty, but only a reasonable certainty is necessary. Albright v. Albright, 153 Iowa 397, 133 N. W. 737; Sires v. Melvin, 135 Iowa 460, 113 N. W. 106, and cases cited. We have no doubt from the evidence that possession of the tract of the south farm was given and taken pursuant to and

in reliance on the consent of the giver; that the evidence so shows. We agree with the district court in holding that the ownership of the south farm was acquired by oral gift; that he is the absolute owner thereof.

II. The district court found and we are agreed that the evidence does not show any verbal gift of the north tract, the home farm designated as tract one, to Thomas, but the court did find that all the elements of adverse possession entered into his occupancy and that he was entitled to the ownership thereof by reason of such adverse possession. Of course the question of adverse possession enters into the ownership of the south farm, and the oral gift in his case also established his title. The elements of adverse possession are so thoroughly established that it seems hardly necessary to quote authority therefor.

In order to establish title by adverse possession it is necessary that certain elements be present:

"Under the decisions of the courts, and in the absence of statutes providing otherwise, in order to constitute adverse possession which results in obtaining title to real property, the possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive. When these elements coincide and the possession continues for the statutory period, a title by adverse possession is acquired." 1 Am. Jur., Adverse Possession, section 126.

The evidence shows that some of these requirements are fully established. It is clear that the possession of both Thomas and William of their respective tracts was actual, open, notorious and continuous; that it was hostile, and we believe that it was under claim of right.

The defendants asserted in argument that a claim of right affords a basis for title by adverse possession. In this state a claim of right, that is, an unequivocal claim to the property, which affords the ground for claimant taking and continuing to hold possession in his own right as against the whole world, is sufficient as a basis for the running of the statute of limitations. Hanson v. Gallagher, 154 Iowa 192, 134 N. W. 421, citing, among others, Montgomery County v. Severson, 64 Iowa 326, 17 N. W. 197, 20 N. W. 458.

"Continuous and uninterrupted possession will not alone establish a claim of right; neither will payment of taxes; but when, with these circumstances, it also appears that the party has set out trees, erected a house and outbuildings, inclosed the premises by fence, cultivated the land, and in all respects treated it precisely as his own, a claim of right may be inferred, and treated as fully established as though shown by oral declarations of such claim." Wilbur v. Cedar Rapids & Mo. R. Ry. Co., 116 Iowa 65, 68, 89 N. W. 101, 102.

We think there can be no question under the record that the acts of defendant with reference to the land from the death of his mother constitutes unequivocal assertion of his individual and exclusive ownership of the land. We think these acts and the showing in the evidence were sufficient to establish a claim of right.

In the present case, which was an action between parties who were formerly tenants in common, it is true that actual notice of claim of title and hostile acts done under such claim are requirements of an ouster. It is true that the possession of a tenant in common is not necessarily adverse to his cotenant, but it can become such and is so regarded where the tenant in common holds possession under a claim of entire ownership, and the cotenant has knowledge of such claim. In some cases no direct evidence is necessary provided the facts and circumstances are such that it may be reasonably presumed that the cotenant has such knowledge of such facts. See Consolidated School District v. Thompson, 194 Iowa 662, 667, 189 N. W. 803, 805, wherein it is said:

"That the occupancy by the district was under a claim of right need not be shown by any specific declaration of the occupant's, but may be inferred from the fact of its exclusive possession, making improvements on the property, and by openly and notoriously appropriate acts of ownership over it for ten years or more." Citing Hanson v. Gallagher, supra.

See, also, other cases cited therein. Also, Wilbur v. Cedar Rapids & Mo. R. Ry. Co., supra; McFerrin v. Wiltse, 210 Iowa 627, 231 N. W. 438; Hughes v. Wyatt, 146 Iowa 392, 125 N. W. 334; Severson v. Gremm, 124 Iowa 729, 100 N. W. 862.

 ■ As shown by the evidence in the present case there was not only claim of right that may be inferred, but there was actual claim of right which was shown by the defendant herein who acted as one of the administrators. There is the claim in the record of the mother's estate which plainly showed that both William and Thomas were claiming the respective tracts which they occupied. We are satisfied that there was evidence sufficient to establish claim of right, and such claim showing intention to occupy, own, and enjoy the land was fully known by the plaintiff. This assertion of ownership by acts and written claim which became a matter of record in the probate proceedings in the estate of the mother was such ouster as showed not only the intention to claim but to occupy the land exclusively. When this ouster was accomplished by the acts, conduct, and written declaration of Thomas the statute of limitations began to run. See Blankenhorn v. Lenox, 123 Iowa 67, 98 N. W. 556; Casey v. Casey, 107 Iowa 192, 77 N. W. 844, 70 Am. St. Rep. 190; Knowles. v. Brown, 69 Iowa 11, 28 N. W. 409; Curtis v. Barber, 131 Iowa 400, 108 N. W. 755, 117 Am. St. Rep. 425.

 Many cases are cited by both plaintiff and defendants but it is not necessary to review them. We think the necessary elements of adverse possession are fully established by the evidence There is some claim on the part of the plaintiff that the possession by the defendants of their respective tracts was not continuous; that the running of the statute would apply only to the original knowledge on the part of the persons against whom the adverse claim is made. But if on subsequent occasions, when the title was discussed, the adverse claimant failed to continue to assert his adverse claim, then his possession is not continuous or adverse. We do not feel that the claimant is compelled at every meeting of the parties again to declare his claim to title, that the fact that it was not discussed at subsequent meetings would prove very little, especially while the claimant is in possession and exercising ownership upon the land which he originally claimed and still, by his acts, appears to claim as his own. We are not satisfied that these alleged subsequent arguments in any way interfered with the continuity of the claim. We hold that not only was the claim of ownership under claim of right, that it was hostile, that it was asserted

against the other heirs and undoubtedly continued. All the elements of adverse possession have been established and the decree of the district court should be affirmed.

We therefore hold that the title has been established to tract one in Thomas J. Lynch, and the title to tract two has been established in William P. Lynch. The finding and decree of the district court is approved and the cause is affirmed.—Affirmed.

All JUSTICES concur.