FRANK SAVOIE, Appellant, v. CHARLES SAVOIE ET AL., Appellees.

Estoppel: EVIDENCE. In an action for partition brought by one devisee against another the evidence is held to estop plaintiff from asserting any interest in lands devised to defendant, by reason of a prior mutual release or waiver of such interest, even though they may not have fully understood just what interest each held in the property devised to the other.

*Appeal from Alamakee District Court.*— HON. L. E. FELLOWS, Judge.

THURSDAY, JUNE 6, 1907.

THE opinion states the case.— *Affirmed.*

*E. W. Cutting,* for appellant.

*Dayton & Dayton,* for appellees.

WEAVER, C. J.— This action was brought in equity for the partition of certain lots in the city of Waukon. Plaintiff asserts ownership of a one-sixth interest in the property derived as follows: On April 29, 1903, one Joseph Savoie died testate seised in fee of the lots above mentioned, which

were occupied by him as a homestead, also of another lot described as lot 4, in block 31.   So far as it appears from the record, these two parcels constituted the bulk of the testator's estate.   By the terms of his will he (1) provided for the payment of his debts; (2) gave his wife a life estate in all his property; (3) gave the remainder in lot 4 above mentioned to his son Frank, who is plaintiff herein; and (4) subject to his debts and the life estate to the widow, gave his homestead lots to his son Charles, who is defendant herein.   These parties, it should be said, are the only heirs at law of Joseph Savoie.   On June 19, 1903, the widow of Joseph Savoie died intestate.   On the theory that the widow, in addition to the life estate given her by the will, was entitled under the law to one-third in fee of the real estate of which Joseph Savoie died seised, and that upon the death of the widow this portion descended in equal shares to her two sons, plaintiff bottoms his claim to a one-sixth part of the homestead lots, for a partition of which he has instituted these proceedings.

By their answer defendants admit the descent of title substantially as claimed by the plaintiff; but, by way of estoppel and avoidance of any claim of right by the latter in said homestead property, they allege that they held large claims against the estate of Joseph Savoie and the estate of his widow, Sarah Savoie, and that, after the death of the latter, the plaintiff, Frank Savoie, being desirous to sell or mortgage lot 4, in block 31, which had been devised to him by his father, and finding the unsettled condition of said estates prevented his giving a clear and satisfactory title, requested defendants to convey to him their interest (derived through the mother) in said lot 4, and to relinquish their claims against said estates, and promised that in consideration of such conveyance and relinquishment on their part he would accept the undivided title to said lot, in full satisfaction and discharge of all his claims in and to the estates and properties left by the said Joseph Savoie and Sarah Savoie. They allege that they accepted this proposition, and in pur-

suance of such agreement did convey to the plaintiff all their interest in said lot 4, and relinquished their claims against the said estates, and thereby perfected in plaintiff the title to said property, and that thereby plaintiff became and is estopped to have or claim any right or interest in the homestead. By cross-petition defendants ask to have their title in the last-mentioned property quieted in themselves. The trial court found the equities to be with the defendant, and plaintiff appeals.

While the evidence is conflicting, it fairly preponderates in support of the appellees claim that, after the death of both of the parents, appellant was desirous of realizing by sale or mortgage upon the property devised to him by his father's will. It is very probable that neither Frank nor Charles at this time fully understood that their titles to their respective lots were not wholly derived from their father's will, or that either had any share in the title to the lot devised to the other, and, when the agent who negotiated the loan required a quitclaim from Charles to Frank before closing the loan to the latter, it may be doubted whether they fully comprehended the reason for the demand. But it is shown with reasonable degree of certainty that they did understand that the estates of their deceased parents were not yet fully settled, and that a settlement of their respective rights in the property was desirable to avoid any future trouble or conflict of interests. We shall not detail the evidence bearing upon the question, but will say that it fairly well supports the conclusion of the trial court that appellant did accept the conveyance from Charles in full satisfaction of all his claims upon the property left by their deceased parents. They may not have fully understood just what right each held in the property devised to the other, but that they intended a mutual release or waiver is fully established. It is hardly conceivable that Charles should have released without consideration a one-sixth interest in the lot held by Frank, and at the same time permit the latter to retain a like interest in

the homestead property held by himself without request or demand for a release thereof. Even if both were ignorant of the true situation in this respect, a court of equity would be very slow to allow the appellant to thus secure his own portion, free from the claim of his brother, and at the same time insist upon a share in the portion of the latter. He should not be permitted to profit by his discovery of their common mistake of law and fact, to the injury of the brother, whom he had procured to relinquish a valuable right. He who asks equity should show his willingness to deal equitably. *Baker v. Massey,* 50 Iowa, 403.

We are satisfied that the decree of the trial court effects substantial justice, and it is *affirmed.*