NELLIE DETRICK and MATTIE HANNAH, Appellants, v. ISAAC PATTERSON, Appellee.

**Fraudulent conveyances:** BURDEN OF PROOF: EVIDENCE. In an action
1   to cancel a conveyance on the ground of fraud the burden is upon the plaintiff to establish the fraud by clear and satisfactory evidence,

unless a confidential or fiduciary relation between the parties is shown to have existed, and then the burden of showing the good faith of the transaction is shifted and placed upon the grantee. In this action the evidence is held insufficient to show fraud on the part of defendant, who was an uncle of plaintiff's, or to establish such a confidential relationship of the parties as to place the burden of showing good faith on him.

Cancellation of instruments: RESTORATION OF CONSIDERATION. Where all the parties to a quit claim deed understood at the time that full title to the real estate was being conveyed to the grantee and a fair consideration was paid therefor, but the grantors did not in fact have the title, before a suit could be maintained to set aside a subsequent deed given to perfect the title, on the ground that it was obtained by fraud, it was necessary for the grantors to restore or offer to restore the consideration received.

Pleadings: AMENDMENTS. It is the rule to permit amendments to pleadings at any stage of the cause, so long as prejudice does not result to the adverse party. In the instant case an amendment to conform the pleadings to the evidence was not prejudicial, on the ground that it deprived the opposite party of the right of cross-examination and the introduction of further evidence to meet the new issues; especially as he did not ask to have the case re-opened, and the evidence introduced was pertinent to the newly pleaded facts and the cross-examination had been thorough.

*Appeal from Crawford District Court.*—HON. F. M. POWERS, Judge.

WEDNESDAY, MAY 7, 1913.

ACTION to set aside conveyance of real estate alleged to have been procured through fraud. Trial. Decree against plaintiffs on their petition, and for defendant on his cross-petition. Plaintiffs appeal.—*Affirmed.*

*John Newburn* and *Church & McNully,* for appellants.

*Conner & Lally,* for appellee.

WITHROW, J.—Plaintiffs are nieces of the defendant, and of Robert N. Patterson, who died intestate in 1874, seised

of the land in controversy, he at the time being unmarried, having no issue, and his mother, the grandmother of plaintiffs, was his sole heir. The mother of plaintiffs died before her brother, Robert N. Patterson; and at the time of the different transactions hereinafter referred to the plaintiffs, with their brothers, upon the death intestate of the grandmother, Margaret Patterson, were entitled to share in her estate. She died in 1896 or 1897. After the death of Robert N. Patterson, acting upon the theory and under the belief that his brother, the appellee, and his sister and the heirs of his deceased sister, the mother of appellants, were entitled to his estate, the appellee, by negotiations which were concluded in 1883, procured from all of said parties quitclaim deeds to the land in controversy, and to each of the grantors he made payment for their respective interests at the rate of about $24 per acre for the land, which is shown by the evidence to then have been its fair market value. It appears that at such time the grantors desired to get their interests in the estate of Robert N. Patterson. No other conclusion can fairly be reached from the evidence than that, at the time of the quitclaim deeds, all parties to the transaction believed and acted upon the belief that by such conveyances the grantors were the owners of the interests conveyed, and were intending to vest such interests in the grantee, the appellee. At the time of such conveyances, however, the title to the real estate was in Margaret Patterson, mother and sole heir of Robert N. Patterson, and the grantors had no interest in the land subject to conveyance. The land is the north half of section 12, township 84, range 37; the south half of the section having been at the time of the quitclaim deeds owned by the appellee. So far as the evidence discloses the mother of appellee gave but little attention to business affairs, but approved the procuring of the quitclaim deeds, and, as before, continued to reside with her son, the appellee, and from the income of the lands was provided support. This statement of facts, as to which there is no real

dispute, is necessary to a proper understanding of the subsequent conveyance, which is the one in controversy. After the death of his mother, Margaret Patterson, having been advised that his record title to the land was incomplete, the appellee sought and procured without the payment of any new consideration a warranty deed to the land signed by all the other heirs of Margaret Patterson, the deed bearing date October 26, 1897.

This action by the appellants to set aside such conveyance was brought March 17, 1911, charging that as to them the warranty deed was without consideration; that it was obtained by false and fraudulent representations, made to them by the appellee, that he owned the land, that they owned no interest in the land, and that there was a flaw in the title which the deed would cure, and that as a favor to him he wished them to sign the deed; that they had full and complete confidence in the defendant, appellee, who is their uncle, he having handled their business affairs for them since their childhood and since they arrived at maturity; and having complete confidence in him, and relying upon his said statements that they had no interest in the land, they executed such conveyance. Then follows a pleading of his knowledge of the fraud, and that it was with intent to deceive them. They aver that such fraud was not discovered until 1910. The defendant denies all fraud or intended fraud, and states that the quitclaim deeds of 1883, which he sets out, were made for a full consideration, with the full consent and approval of his mother, and that it was then believed by all parties that he was purchasing by said quitclaim deeds all interests except his own in the land; and that the instrument in controversy ratified, confirmed, and reinforced the quitclaim deeds. He pleads adverse possession for more than ten years, and by way of estoppel that the appellants received the full value of the shares in the land which would have been theirs had they then taken directly as heirs of Robert N. Patterson; that they have re-

tained such consideration, and have never offered to restore the same to appellee. By cross-petition defendant, appellee, prayed that his title to the land be quited in him as against these claimants.

II. In the first instance the burden of proof is upon the plaintiffs to establish fraud in the transaction by evidence which is clear and satisfactory. If confidential or fiducial relations between the parties are shown to have existed at the time, the burden then falls upon the grantee to show that the transaction was free from fraud or over-reaching made possible because of such relation.

1. FRAUDULENT CONVEYANCES: burden of proof: evidence.

III. The appellants, nieces of the appellee, both testified in general terms that they had often been in their uncle's home, lived near by him for many years, and Mrs. Hannah, when a girl, for a while resided with him; that they frequently received and relied upon his advice, and had confidence in him, which induced them to rely upon his statements when executing the warranty deed. Brought to more detail in statement, neither was able to give any particular instance of business advice or confidence, excepting, in the case of each, marriage problems, which on the part of Mrs. Detrick arose long after the execution of the warranty deed, and as to Mrs. Hannah was only an expression of approval of her intended marriage. Both seem to be women of self-reliance and independent thought. It incidentally appears that the trouble between the parties, of which this is one of the angles, if they had before existed, became acute when their uncle made known his intention to take a wife, which in point of time is nearly coincident with their claimed discovery of the fraud which is charged.

The appellee in his testimony denied that any confidential relations had existed other than a friendly attitude that naturally resulted from their relationship. He was not nor had not been their advisor as to any matters excepting as stated in particular by them, and he denies that, at the time

of procuring the signatures of the parties to the warranty deed, he used any deceit or made any representations as to his or their title as claimed by them. The evidence falls short of that which is necessary to establish fraud. In the light of the previous quitclaim deeds it rather shows an act quite in harmony with a purpose to make good that which was by all parties supposed to be good, but really was fatally defective; and although a legal obligation to do so may not have existed, when done the deed was consistent with good morals and fair dealing. Did the burden of proof change? The relationship between the parties was not that of parent and child, guardian and ward, nor such as is usually considered that close and confidential association which requires that in business affairs the utmost good faith shall at all times be shown. We are not able to find in this evidence, in the degree of strength which such a claim requires, that which establishes either the existence of such a duty, or facts which, were it shown, would amount to its violation.

IV. It quite satisfactorily appears that in the transaction in 1883 resulting in the quitclaim deeds, all parties to it

2. CANCELLATION OF INSTRUMENTS : restoration of consideration.

understood and believed, although erroneously so, that the full title to the real estate in question was being conveyed to Isaac Patterson. There was a mutual mistake which induced the transaction. The appellants received a fair consideration for the part understood to have been conveyed. They have not offered to restore to the appellee the consideration with which he then parted. It would be inequitable to grant to appellants that which they now claim, and at the same time leave them in possession of that which they received. They have not offered to do equity. This is necessary to the assertion of claimants' rights in a court of equity. *Savoie v. Savoie,* 134 Iowa, 672.

V. There having been a failure to establish fraud or equitable rights in appellants it is unnecessary to consider the plea of adverse possession as a defensive one. The evidence

shows such possession by him under claim of right and color of title as to warrant the action of the trial court in quieting the title in him as against the claims of appellants.

VI. At the close of all the testimony the court upon application, permitted the defendant to file an amendment to his answer, setting up by way of defense new averments which had been covered by the proof. Of this complaint is made. The right to file amendments at any stage of the case is liberally granted by the courts, so long as such may not result in prejudice to the rights of the adverse party. The appellants urge that they were deprived of the right to fully cross-examine the witnesses and introduce testimony upon the new theories or defense presented by the amendment. Beyond objecting, at the time, to the filing of the amendment the record does not show that the appellants sought to have the case reopened that they might meet the new questions pleaded. As the evidence introduced had pertinent application to the newly pleaded facts, and cross-examination had apparently been thorough, we find no prejudice resulting from the filing of the amendment.

3. PLEADINGS: amendments.

The decree of the lower court is right and is *Affirmed.*